**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
Attorneys for Defendants LVMPD and Officer Garcia

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ASIA EL-NIMEIRI-WILLIAMS, an individual,<br><br>                   Plaintiff,<br><br>    vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; OFFICER GEORGE GARCIA, individually and in his official capacity as a police officer employed by the LVMPD; DOE OFFICER 1, individually and in his official capacity as a police officer employed by the LVMPD and DOES 1 through 10, inclusive,<br><br>                 Defendants. | Case Number:<br>2:24-cv-01906-APG-EJY<br><br>**DEFENDANTS LAS VEGAS METROPOLITAN POLICE DEPARTMENT AND OFFICER GARCIA'S MOTION FOR SUMMARY JUDGMENT** |

Defendants Las Vegas Metropolitan Police Department ("LVMPD") and Officer George Garcia ("Officer Garcia"), by and through their counsel, Marquis Aurbach, hereby file their Motion for Summary Judgment. This Motion is made and based upon the Memorandum of Points & Authorities, the pleadings and papers on file herein and any oral argument allowed at the time of hearing.

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

This is a 42 U.S.C. § 1983 excessive force lawsuit. On October 16, 2022, plaintiff Asia El-Nimeiri-Williams ("plaintiff") attended a concert at Zouk Night Club inside Resorts World Las Vegas. Due to reports of a possible fight, Officer Garcia and other LVMPD officers positioned themselves at the back of the house where several concert goers were assembling.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   The officers attempted to assist casino security with controlling the chaotic scene and getting

2   the patrons to disperse. Eventually officers began to arrest non-compliant individuals. One of

3   the arrested individuals was plaintiff's boyfriend. When the uniformed officers attempted to

4   take the boyfriend into custody, an agitated plaintiff inserted herself between the officers and

5   the boyfriend to obstruct his arrest. When plaintiff grabbed the arm of an LVMPD sergeant,

6   Officer Garcia intervened and pushed plaintiff backwards with both hands, causing her to fall

7   to the ground. Plaintiff immediately rose to her feet, continued to verbally berate and yell at

8   the officers and again attempted to get past the officers forcing Officer Garcia to push her

9   backwards several more times. Eventually, plaintiff left the area without showing any signs

10   of injury or complaining of injury.

11        Plaintiff now claims Officer Garcia's efforts to prevent her from obstructing her

12   boyfriend's lawful arrest violated both federal law and Nevada state law. Specifically,

13   plaintiff's First Amended Complaint[1] alleges: (1) § 1983 excessive force, (2) § 1983 *Monell*[2]

14   liability against LVMPD; (3) state law assault and battery; (4) state law negligence; and (5)

15   state law intentional infliction of emotional distress ("IIED"). The foundation of all of

16   plaintiff's claims is her excessive force-based claim. If Officer Garcia used reasonable force,

17   all of plaintiff's claims fail. Discovery confirmed Officer Garcia's low-level use of force was

18   a reasonable as a matter of law under the circumstances. Thus, summary judgment is

19   appropriate on all claims.

20   **II.**    <u>**STATEMENT OF FACTS**</u>

21        **A.**    **PLAINTIFF'S VERSION.**

22            **1.**    <u>**The subject incident.**</u>

23        In October 2022, plaintiff traveled to Las Vegas with her boyfriend, Kay Houston

24   ("Houston").[3] Plaintiff and several friends visited Zouk Nightclub to watch artist Travis Scott

25

26   ———————————

[1] ECF No. 10.

27   [2] *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978).

28   [3] Plaintiff Depo. at 16:17-20, **Exhibit A**.

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

perform.[4] Plaintiff denies consuming any alcohol or taking any drugs.[5] Around closing time, plaintiff and her group attempted to leave the night club.[6] Plaintiff testified she was unaware of any potential disturbances or any fights amongst the concert attendees.

As the group attempted to exit through a back of the house hallway, plaintiff became separated from her party and found herself facing several security guards and police officers.[7] Plaintiff agrees the situation was chaotic with little structure and with the police aggressively confronting the peaceful crowd.[8] Plaintiff obtained a visual on Houston, who was behind the police line, and attempted to join him.[9] She denies recognizing the police were arresting Houston.[10] According to plaintiff, Officer Garcia, without provocation, began yelling in her face and telling her to back up.[11] Plaintiff claims she calmly responded she only wanted to join Houston because he had her phone and room key.[12] In response, and without warning, Officer Garcia forcefully pushed plaintiff to the ground.[13] Once on the ground, an unknown man fell on top of plaintiff.[14]

Plaintiff returned to her feet and reengaged Officer Garcia asking him: "Why did you push me? You did not have to do that. You don't have to be aggressive with me."[15] In

---

[4] *Id.* at 16:21-18:13, 20:1-5.

[5] *Id.* at 19:15-25.

[6] *Id.* at 20:10-21:10.

[7] *Id.* at 21:3-10; 24:8-12.

[8] *Id.* at 23:5-25 & 24:21-25:7.

[9] *Id.* at 27:6-27:17.

[10] *Id.* at 29:24-30:1.

[11] *Id.* at 25:23-26:6.

[12] *Id.* at 27:6-27:17; 35:14-36:4.

[13] *Id.* at 26:6-10; 31:9-17; and 32:18-20.

[14] *Id.* at 31:20-32:4.

[15] *Id.* at 31:17-19.

MAC: 14687-511 (#5973635.2)

response, plaintiff claims Officer Garcia pushed her to the ground a second time.[16] Plaintiff stood up and asked "Why are you pushing me? Why are you so forceful? I'm just trying to leave the venue."[17] Although plaintiff admits Officer Garcia never touched her breasts; she complains the second fall accidently caused the exposure of her breasts.[18] Once back on her feet, plaintiff told Officer Garcia he should never touch a woman.[19] Plaintiff's FAC alleges Officer Garcia choked her[20], but she now admits this representation is false.[21] As plaintiff was leaving the venue, an identified officer (not Officer Garcia) allegedly punched or jabbed plaintiff in the stomach.[22]

### 2.    The aftermath.

Once outside the venue, plaintiff found other LVMPD officers and told them what occurred inside.[23] Although plaintiff characterizes the officers as "helpful", she denies any recollection of the actual conversation topics.[24] Plaintiff eventually left the property and traveled to a friend's house.[25] Once plaintiff calmed down, she noticed her head and lower back hurt.[26] She claims the impact of the unknown gentleman falling on top of her caused a

---

[16] *Id.* at 33:10-18 (there is no video support for this second fall allegation).

[17] *Id.*

[18] *Id.* at 32:8-17 & 34:3-17.

[19] *Id.* at 42:10-21.

[20] FAC No. 10 at ¶12.

[21] Pltf's Depo. at 50:24-51:2, Ex. A.

[22] *Id.* at 37:14-21 & 38:1-10.

[23] *Id.* at 40:11-14.

[24] *Id.* 40:24-41:7.

[25] *Id.* at 41:8-23.

[26] *Id.* at 42:22-43:2.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

permanent indentation on her head.[27] She felt head and back pain for weeks after the incident.[28] Plaintiff made one visit to an urgent clinic two or three days post-incident.[29]

Plaintiff admits Houston was taken to jail. Despite currently living with him as a couple, plaintiff denies any knowledge of the reasons behind his arrest or the status of the charges.[30]

## B.    OFFICER GARCIA'S VERSION AND THE VIDEO EVIDENCE.

### 1.    Officer Garcia's version.

On October 16, 2022, at approximately 4:52 AM, Officer Garcia received the assignment to maintain a police presence inside Zouk Nightclub due to reports of an unruly crowd.[31] Once inside the club, officers received information of a possible fight.[32] Several officers responded and encountered a large crowd of patrons attempting to leave the club through a narrow hallway located at the back of the house.[33] The officers immediately began instructing the patrons to disperse and vacate the hallway.[34] Officer Garcia's supervisor instructed the officers to arrest anyone refusing to voluntarily leave.[35] Several patrons ignored the officers' lawful commands and continued to attempt to leave through the back of the house

---

[27] *Id.* at 43:3-20 & 44:4-10.

[28] *Id.* at 43:21-44:3.

[29] *Id.* at 45:5-19 & 46:9-47:4. (Plaintiff produced no medical records or expert reports supporting her injury claims.)

[30] *Id.* at 36:5-37:6.

[31] Garcia Depo. at 17:15-18:6, **Exhibit B**; Garcia Use of Force Report, **Exhibit C**.

[32] Garcia Depo. at 22:6 – 23:3, Ex. B; Use of Force Report at p. 1, Ex. C.

[33] Use of Force Report at p.1, Ex. C.

[34] *Id.*; Garcia Depo. at 25:5-13, Ex. B.

[35] Garcia Depo. at 23:12-14, Ex. B.

MAC: 14687-511 (#5973635.2)

entrance.[36] Officers began to detain the most egregious offenders, one of whom was plaintiff's boyfriend, Houston.[37]

As non-party officers attempted to take Houston into custody, Officer Garcia observed plaintiff attempting to obstruct the arrest by inserting herself between the arresting officers and Houston.[38] When plaintiff grabbed an LVMPD sergeant's arm, Officer Garcia intervened and pushed plaintiff backwards using both hands.[39] Officer Garcia's push caused plaintiff to fall onto her back where another patron fell on top of her.[40] Plaintiff quickly got back up and proceeded to berate and yell at the officers to release Houston.[41] Officer Garcia told her again to back up because she was too close and he did not want to take her to jail.[42] Plaintiff again attempted to get around Officer Garcia forcing him to push her backwards again.[43] Officer Garcia, to avoid touching plaintiff's breasts, placed his hands high on her upper chest where his fingers contacted her neck, but he never choked her.[44] Plaintiff never complained of injury or showed signs of injury.

Officer Garcia never felt plaintiff was a serious threat to him, but testified she was obstructing the other officers' attempt to perform the arrest.[45] Although Officer Garcia had

---

[36] Use of Force Report at p.1, Ex. C.

[37] *Id.*

[38] Garcia Depo. at 25:16 – 27:3, Ex. B.

[39] *Id.* at 27:4-12 and 34:22-25.

[40] *Id.* at 31:18-32:5 (Officer Garcia did not see the man fall on her but does not dispute this occurred).

[41] *Id.* at 28:17-22.

[42] *Id.* at 29:19-24.

[43] *Id.* at 33:15 – 34:21.

[44] *Id.* at 28:22 - 29:2 and 37:13 – 38:1.

[45] *Id.* at 31:6-8.

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    probable cause to arrest plaintiff for obstruction under Nevada Revised Statute ("NRS")
2    197.190, he used his discretion not to do so.[46]

### 2.    The video evidence

### a.    The incident.

5        Officer Garcia's body worn camera video shows several LVMPD officers entering a
6    chaotic and uncontrolled situation at the back of Zouk Nightclub.[47] Upon entering the narrow
7    hallway, Officer Garcia's sergeant can be heard saying "anyone not complying [with the
8    dispersal order] goes to jail."[48] As Officer Garcia moved to the front of the police line, other
9    officers began to take Houston into custody.[49] Plaintiff is captured on the video yelling at the
10   officers and can be seen attempting to involve herself in Houston's arrest and grabbing the
11   officers.[50] Officer Garcia attempted to separate plaintiff from the officers, and Houston told
12   her to "back up!"[51] When plaintiff refused, Officer Garcia shoved her backwards, causing her
13   to fall to the ground.[52] A cellphone video produced by plaintiff, showed the altercation from
14   a different angle with plaintiff going to the ground and an unknown male falling on top of her.
15   Plaintiff was immediately assisted to her feet.[53] Four seconds after standing up, an emotional
16   plaintiff reengaged Officer Garcia and attempted to walk past him, forcing him to gently push
17   her back again.[54] Plaintiff responded by pushing his hands away and told him not to put his

18

---

19   [46] *Id.* at 49:20 – 50:14.

20   [47] Garcia BWC (0358) at T10:57:31 – T10:58:15Z, **Exhibit D**.

21   [48] *Id.* at T10:58:19Z.

22   [49] *Id.* at T10:58:58Z.

23   [50] *Id.* at T10:58:59Z; *see also* Christian BWC (0358) at T10:58:55Z – T10:59:03Z; Atkinson BWC
24   (0357) at T10:58:45Z – T10:58:59; Kyger BWC (0358) at T10:58:46Z – T10:58:58Z, Ex. D.

25   [51] *Id.* at T10:59:02Z.

26   [52] *Id.* at T10:59:07Z – T10:59:09Z.

27   [53] Cellphone Video, Ex. D.

28   [54] Garcia BWC (0358) at T10:59:32Z, Ex. D.

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    hands on her.[55] At that point, an unidentified female patron intervened and separated plaintiff

2    from the officers.[56]

3         Plaintiff temporarily disappeared but reappeared seconds later and again confronted

4    Officer Garcia.[57] Officer Garcia again used his hands to move plaintiff backwards to which

5    she yells "What the fuck!"[58] For a fourth time, plaintiff attempted to push past Officer Garcia

6    causing him to grab her by the shoulders and move her backwards with the warning "I will

7    arrest you."[59] Plaintiff yelled at Officer Garcia to "keep get your hands off me."[60] The two

8    then pointed at one another, and plaintiff warned Officer Garcia "I work at a law firm."[61]

9    Plaintiff again attempted to get around Officer Garcia, and he moved her backwards while

10   asking "you want to go to jail?"[62] Plaintiff's friend again intervened.[63] Shortly thereafter, a

11   handcuffed Houston is escorted past plaintiff, and she followed him and the arresting officers.

12   This ended plaintiff's interaction with Officer Garcia.

13           **b.**     **Post-incident.**

14        Outside the venue, plaintiff obtained an audience with Sergeant Zach McCartin.[64]

15   Sergeant McCartin first asked plaintiff if she required medical attention and she denied.[65]

16   Plaintiff then showed the Sergeant the cell phone video and falsely claimed she also had a

17    

18   _____

    [55] *Id.*

19   [56] *Id.* at T10:59:44Z.

20   [57] *Id.* at T11:00:13Z.

21   [58] *Id.* at T11:00:18Z – T11:00:20Z.

22   [59] *Id.* at T11:00:30Z – T11:00:42Z.

23   [60] *Id.*

24   [61] *Id.* at T11:00:40Z – T11:00:43Z.

25   [62] *Id.* at T11:00:45Z – T11:00:48Z.

26   [63] *Id.* at T11:01:00 – T11:01:02Z.

27   [64] McCartin BWC (0444) at T11:44:45Z, Ex. D.

28   [65] *Id.* at T11:45:34Z.

MAC: 14687-511 (#5973635.2)

video of her being choked.[66] Sergeant McCartin responded by explaining the situation to plaintiff, apologizing that plaintiff hit the floor, and promising to investigate.[67] Plaintiff reported three different officers assaulted her.[68]

Several minutes later, Sergeant McCartin recontacted plaintiff to explain the charges against Houston.[69] While Sergeant McCartin was explaining the situation, Officer Garcia approached and joined the conversation.[70] Officer Garcia delivered Houston's personal property to plaintiff.[71] Plaintiff identified Officer Garcia as the officer who "pushed me to the ground."[72] Officer Garcia apologized for plaintiff hitting the ground but reminds her he warned her to move back.[73] Plaintiff also falsely reported to Sergeant McCartin that Officer Garcia "choked me up" and Officer Garcia disagreed.[74] Plaintiff refused to provide Sergeant McCartin a copy of the cell phone videos or any other videos.[75] When asked a second time if plaintiff was injured or needs medical attention, plaintiff ignored the question and walked away.[76]

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

---

[66] *Id.*; Garcia Depo. 37:6 – 38:1, Ex. B.

[67] McCartin BWC at T11:48:00Z – T11:48:50Z, Ex. D.

[68] *Id.* at T11:49:30Z – T11:49:52Z.

[69] McCartin BWC (502) at T12:12:01:30Z – T:12:03:32Z, Ex. D.

[70] *Id.*; *see also* Garcia BWC (0454) at T12:03:16Z, Ex. D.

[71] Garcia BWC (502)  at T12:03:32Z, Ex. D.

[72] *Id.* at T12:03:49Z.

[73] *Id.* at T12:03:50Z – T12:04:03Z.

[74] *Id.*

[75] McCartin BWC (502) at T12:04:20Z- T12:04:31Z, Ex. D.

[76] *Id.* at T12:04:40Z – T12:04:47Z.

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## III.    LEGAL STANDARDS

### A.    SUMMARY JUDGMENT STANDARDS.

Under Rule 56 of the Rules of Federal Procedure, "[a] party may move for summary judgment, identifying each claim or defense - - or the part of each claim or defense - - on which summary judgment is sought [and] [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[77] The purpose of summary judgment "is to isolate and dispose of factually unsupported claims."[78] The rule, however, is not a "procedural short cut," but a "principal tool [] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."[79] The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.[80]

According to the Supreme Court, in § 1983 use of force cases, a court should use video evidence when available in deciding reasonableness.[81] And, although a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" the court need not credit facts "unsupported by the record such that no reasonably jury could believe them, [and] need not rely on those facts for purposes of ruling on the summary judgment motion."[82]

### B.    GENERAL § 1983 AND QUALIFIED IMMUNITY STANDARDS.

Section 1983 is not itself a source of substantive rights, but merely the procedural vehicle by which to vindicate federal rights elsewhere conferred.[83] To make out a prima facie

---

[77] Fed.R.Civ.P. 56(a).

[78] *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).

[79] *Id.*

[80] *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[81] *Scott v. Harris*, 550 U.S. 371, 380 (2007); *Hughes v. Rodriguez*, 31 4th 1211, 1218-19 (9th Cir. 2022).

[82] *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Scott*, 550 U.S. at 378-80).

[83] *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right.[84] The officers do not dispute that they acted under color of law. Therefore, the first task of this court is to determine whether the defendant officers violated the Constitution.[85] In addition, the officers have raised the affirmative defense of qualified immunity.

"In determining whether an officer is entitled to qualified immunity, [a court] consider[s] (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct."[86] The Supreme Court has advised lower courts construing claims of qualified immunity "not to define clearly established law at a high level of generality."[87] The import of that instruction is, as the Supreme Court has explained, that "doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."[88] The Supreme Court has explained that "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'."[89] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law'."[90]

---

[84] *See Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989).

[85] *See Albright*, 510 U.S. at 271.

[86] *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted).

[87] *Plumhoff v. Rickard*, 572 U.S. 765, 729 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

[88] *Id.*

[89] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[90] *Ashcroft v.al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## IV.    LEGAL ARGUMENT

### A.    PLAINTIFF'S § 1983 EXCESSIVE FORCE CLAIM AND RELATED NEVADA STATE LAW CLAIMS FAIL AS A MATTER OF LAW (FIRST, THIRD, AND FOURTH CAUSES OF ACTION).

In plaintiff's § 1983 excessive force claim she asserts that while "attempting to comply with the officers by exiting the event, [Officer] Garcia forcefully grabbed [plaintiff] by the neck and violently slammed her to the ground on her back . . . [and then] slammed a male victim on [plaintiff]."[91] She also claims an unknown officer "viciously hit [plaintiff] in her stomach."[92] According to the FAC, plaintiff "did nothing to justify the force used against her, and the same was excessive, unnecessary, and unlawful."[93] Plaintiff's state law assault and battery claims make identical allegations.[94]

#### 1.    § 1983 Excessive force and Nevada state law assault/battery legal standards.

The Nevada Supreme Court has confirmed that the same Fourth Amendment standards governing § 1983 excessive force claims also govern state law battery claims.[95] In evaluating a Fourth Amendment excessive force claim, a court asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."[96] "Not every push or shove . . . violates the Fourth Amendment."[97] To determine whether an officer's

---

[91] ECF No. 10 at ¶23.

[92] *Id.* at ¶24.

[93] *Id.* at ¶25.

[94] *Id.* at ¶¶54, 55, 62, and 63.

[95] *See Mack v. Williams*, 522 P.3d 434, 442 (Nev. 2022) (the standard governing the claim mirrors the federal court analysis of an excessive force claim brought pursuant to the Fourth Amendment); *Estate of Brenes v. Las Vegas Metro. Police Dep't*, 136 Nev. 806 (2020) (unpublished) (interpreting and applying Ninth Circuit law to a state law battery claim against a police officer); *see also Tuuamalemalo v. Greene*, 946 F.3d 471, 478 (9th Cir. 2019) (quoting *Ramirez v. City of Reno*, 925 F.Supp. 681, 691 (D. Nev. 1996) ("Under Nevada law, police officers 'are privileged to use that amount of force which reasonably appears necessary,' and are liable only to the extent they use more force than reasonably necessary."))

[96] *Graham v. Connor*, 490 U.S. 386, 397 (1989).

[97] *Id.* a 396.

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

actions are objectively reasonable, courts are instructed to follow *Graham v. Connor* and consider: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion."[98] *Graham* identifies three factors that courts should consider in evaluating the government's need to use force: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape."[99] Of the three *Graham* factors, the most important is "whether the suspect posed an immediate threat to the safety of the officers or others."[100] Courts judge reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[101] "It is also well-established that police officers 'are not required to use the least intrusive degree of force possible.'"[102]

### 2. Analysis of plaintiff's § 1983 excessive force claim and state law battery claim.

#### a. Nature and quality of the intrusion.

The first step in the excessive force analysis is to identify the nature and quality of the intrusion. LVMPD policy characterizes an open hand push as low-level force.[103] Courts agree.[104] In *Jackson v. City of Bremerton*, the Ninth Circuit characterized the forcing of an

---

[98] *Id.*; *Williamson v. City of National City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (citations omitted).

[99] *Graham*, 490 U.S. at 396.

[100] *A. K. H. by & through Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) (quoting *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011)).

[101] *Graham*, 490 U.S. at 396.

[102] *Williamson*, 23 F.4th at 1151 (quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017)).

[103] LVMPD Use of Force Report at LVMPD 000038, Ex. C; Garcia Depo. at 30:21-31:1, Ex. B.

[104] *See, e.g., Hereford v. City Hemet*, ___ F.Supp.3d ___, 2025 WL 2104032, *16 (C.D. Cal. July 17, 2025) (pushing an individual in the back who is obstructing an arrest is minimal force.); *see also Burke v. City of Oklahoma City*, 2025 WL 1444410, *7-8 (10th Cir. May 20, 2025) (handcuffed suspect who

obstructing suspect to the ground as "normal handcuffing procedure" and "minimal force."[105] More recently, in *Williamson v. City National*, the Ninth Circuit categorized the handcuffing, dropping, lifting, and dragging of a non-compliant but non-violent arrestee as "minimal force" – despite the fact the force caused injury.[106] Courts from other jurisdictions agree that empty-handed shoves constitute minimal force – especially when officers are facing an unruly crowd.[107] Therefore, Officer Garcia's empty-hand use of force is properly characterized as minimal force.

Finally, in evaluating the need for and actual use of force, a court may also consider the severity of injuries.[108] Plaintiff claims to have suffered injuries but has failed to produce any medical records or experts supporting that claim. Plaintiff did produce a single letter suggesting one medical visit occurred, but she did not include any actual medical records or bills, and she identified no medical experts capable of testifying to causation.[109] While injuries are not a precondition to section 1983 liability, their absence can suggest a lesser degree of

---

fell to the ground after being handcuffed subjected to "minimal force."); *Dumas v. Almusawi*, 2024 WL 3414243, *11 (W.D. Penn. July 15, 2024) (Shove by an officer to create space to carry out official duties constituted minimal force.).

[105] *See e.g.*, *Jackson v. City of Bremerton*, 268 F.3d 646, 650-52 (9th Cir. 2001) (breaking a suspect's finger while tackling and handcuffing her was "minimal" force);

[106] *Williamson*, 23 F.4th at 1150-52; *see also Garcia v. City of Santa Clara*, 772 F.App'x 470, 472 (9th Cir. 2019) ("The relatively mild force that was used by law enforcement, which included a leg sweep, control holds, and a punch to the face, was reasonable under the circumstances. Apart from [the officer's] reasonable use of force to pull [the suspect] into the hallway, all other force used was in direct response to [the suspect's] efforts to resist arrest."); *Donovan v. Phillips*, 685 F. App'x 611, 612 (9th Cir. 2017) (describing the level of force as "relatively minimal" when an officer grabbed the suspect's wrist, pulled her arm downward, and caused suspect to roll onto the ground); *see also Johnson v. County of Los Angeles.*, 340 F.3d 787, 793 (9th Cir. 2003) ("We conclude that hard pulling and twisting applied to extract a moving armed robbery suspect from a getaway car under these circumstances is a minimal intrusion on his Fourth Amendment interests."); *Lawrence v. City & County of S.F.*, 258 F. Supp. 3d 977, 992-93 (N.D. Cal. 2017) (pulling resistant suspect out of a police car and dropping suspect on the ground not excessive force)

[107] *Ference v. Township of Hamilton*, 538 F.Supp.2d 785, 807 (D.N.J. 2008) (shoving a suspect constituted minimal force when dealing with a volatile situation involving multiple parties).

[108] *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2019) (citing *Santos v. Gates*, 287 F.3d 846, 855 (9th Cir. 2002)).

[109] Plaintiff's Produced Medical Letter, **Exhibit F**.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

force when that force is of the type likely to cause injuries.[110] Plaintiff's failed to provide supporting tangible evidence of her injuries from Officer Garcia's push requiring medical treatment. Thus, even if the force used was of a type that is generally intrusive, the amount of force applied here was minimal.[111]

### b. Governmental issue at stake.

Having established Officer Garcia used minimal force, the next step is evaluating his force against the three *Graham* factors (1) the severity of the crime, (2) whether plaintiff presented an immediate threat, and (3) whether plaintiff was resisting arrest. Although plaintiff's potential crime and resistance was minor, Officer Garcia was undeniably entitled to use some force.

### *Severity of the crime and resisting arrest*

The first and third *Graham* factors can be addressed together. Defendants acknowledge both the severity of plaintiff's crime and her subsequent resistance was minor. Still, although plaintiff was never arrested or cited, probable cause existed plaintiff was obstructing the arresting officers. NRS 197.190 makes it a misdemeanor to "willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties."[112] In *Willson v. First Jud. Dist. Ct.*, the Nevada Court of Appeals held that to commit the crime of obstruction, an individual must have the specific intent to hinder, delay, or obstruct a public officer.[113] To avoid a potential clash with the First Amendment, an individual can be convicted only if she hindered, delayed, or obstructed through physical conduct or fighting words.[114]

---

[110] *See Santos*, 287 F.3d at 855, (*citing Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc)).

[111] *Felarca*, 891 F.3d at 817.

[112] NRS 197.190.

[113] *Willson v. First Jud. Dist. Ct.*, 547 P.3d 122, 132 (Nev. Ct. App. 2024).

[114] *Id.* at 133-34.

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    The court stated that physical conduct would include "a person's action (e.g., blocking the

2    path of an officer) or inaction (e.g., refusing to obey a lawful order)."[115]

3         Here, plaintiff knew the uniformed officers were attempting to detain Houston, yet she

4    intentionally attempted to thwart their efforts by getting in the middle of the altercation,

5    physically grabbing the officers, and yelling at the officers. Officer Garcia warned plaintiff on

6    multiple occasions to backup or be arrested, and, despite his threats, plaintiff refused to cease

7    her obstructive behavior and continued in her attempts to obstruct. Plaintiff's actions justified

8    some force because any lawful detention carries with it the right to use some force.[116]

9         **Immediate threat**

10        The most important *Graham* factor is whether the suspect poses an immediate threat

11   to the officer or to public safety.[117] Admittedly, plaintiff's obstructive tactics did not create a

12   grave life or death threat. Still, Officer Garcia "was not required to permit plaintiff's

13   lawlessness."[118] Officer Garcia pushed plaintiff simply to prevent her from interfering with

14   Houston's lawful arrest and only used force after plaintiff refused to comply with his lawful

15   commands to back up. The force becomes even more reasonable when evaluated against the

16   unique set of circumstances facing Officer Garcia and his fellow officers. As demonstrated in

17   the videos, the officers in this case were severely outnumbered by patrons, and the scene was

18   unorganized, chaotic, and dangerous. This unruly group setting increased the immediacy of

19   the threat presented by the plaintiff. Officer Garcia had to act quickly and decisively in

20   resolving the situation due to the fact he had to monitor so many other patrons.

21        In *Jackson v. City of Bremerton*, the Ninth Circuit held it is important to consider

22   factors such as a group setting in evaluating an officer's use of force. In that case, plaintiff

23

24   _____

     [115] *Id.*

25
     [116] *See Graham*, 490 U.S. at 396 (an officer's right to make an arrest necessarily includes the right to
26   use some force in doing so).

27   [117] *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005).

28   [118] *Felarca*, 891 F.3d at 818.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-511 (#5973635.2)

Jackson and her family were attending a party in a park where alcohol was being served.[119] Police arrived and recognized one of the family members as someone with an outstanding warrant.[120] This person, Jackson's son, attempted to flee into the group of people and escape arrest.[121] At least two more officers arrived, and the group yelled and swore at the police and "advanced upon them" as they tried to arrest Jackson's son.[122] Fights broke out between police and members of the group, and Jackson ran over to try and interfere with an officer fighting with a female friend.[123] At some point the officers warned the group a chemical irritant would be used if they did not disperse.[124] An officer applied pepper spray to Jackson to prevent her interference.[125] Jackson's hair was sprayed with pepper spray which dripped down her head, she was pushed to the ground a rough manner, and an officer rolled up the windows of the patrol car she was sitting in with the chemical still on her head when she continued to argue with him.[126] The *Jackson* Court ruled the nature and quality of these intrusions against the plaintiff were "minimal."[127] The court further ruled that because the officers were "substantially outnumbered" and faced with a group that refused to obey the officers' commands to disperse, shouted at the officers, and that engaged the officers in verbal and physical altercations that Jackson's active interference posed an immediate threat to the

---

[119] *Jackson*, 268 F.3d at 649.

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *Id.* at 650.

[124] *Id.*

[125] *Id.*

[126] *Id.*

[127] *Id.* at 652.

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

officers' personal safety and ability to control the group.[128] Thus, the force applied was reasonable and necessary to control a "rapidly evolving" and escalating situation.[129]

More recently, in *Felarca v. Birgeneau*, the Ninth Circuit reiterated that police are not required to permit "lawlessness" in a group setting and have "a legitimate interest in 'quickly dispersing and removing [the] law breakers with the least risk of injury to police and others.'"[130] In that case, the Court held that police officers' baton strikes and jabs against a mass of student protestors who blocked police from accessing tents erected on campus in violation of university policy was a minimal use of force under the circumstances.[131]

Here, it cannot be disputed Officer Garcia had a legitimate "safety interest in controlling" a mass of people who "substantially outnumbered" the officers, "refused to obey the officers' commands . . .," "shouted at the officers" and "engaged the officers in verbal and physical altercations."[132] It also cannot be disputed plaintiff intentionally and actively interfered with the officers' attempts to perform their lawful duties. The officers had a legitimate interest in dispersing the crowed and arresting those committing crimes. The video clearly shows plaintiff attempting to prevent the officers from carrying out their duties by attempting to obstruct their efforts and potentially incite other patrons to assist.[133] The reasonableness of Officer Garcia's force is demonstrated by the fact he only used a low-level type of force – an empty hand push. In *Jackson* and *Felarca*, the Ninth Circuit sanctioned the use of intermediate force (pepper spray and batons) against minimally resisting individuals

---

[128] *Id.*

[129] *Id.* at 653.

[130] *Felarca*, 891 F.3d at 817 (citing *Forrester v. Cit of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994)).

[131] *Id.*

[132] *Id.* (citing *Jackson*, 268 F.3d at 652-53).

[133] *See Felaraca*, 891 F.3d at 818 (situation confronting officers was "far more threatening" because the officers were greatly outnumbered and verbally and physically provoked).

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

because the officers were confronting a group setting with obstructive individuals.[134] Thus, based on the totality of the circumstances and the fact the shove occurred in a group setting, no reasonable jury could find Officer Garcia acted unreasonably.

Lastly, plaintiff's allegation an unknown officer struck her in the stomach must be dismissed because plaintiff admits the alleged perpetrator was not Officer Garcia. It is well-established an individual officer cannot be liable for the intentional acts of another officer – especially one that has never been identified.[135]

### 3.    At a minimum, Officer Garcia is entitled to qualified immunity on the § 1983 excessive force claim.

Under the second prong of the federal qualified immunity analysis, a court evaluates whether the officers' conduct violates clearly established statutory or constitutional rights of which a reasonable officer would have known.[136] "It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established."[137] Qualified immunity does not apply to plaintiff's state law claims.[138]

Here, any reasonable officer would have believed that using an empty hand push to separate an out of control individual attempting to physically interfere with a lawful arrest to be constitutional. The Ninth Circuit has noted the significant officer and public safety concerns in such situations – especially when the incident occurs in an uncontrolled group setting.[139] Defendants cannot locate a Supreme Court or Ninth Circuit case with analogous

---

[134] *See Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011) (pepper spray and baton blows "are considered a form of 'intermediate force'").

[135] *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (when suing a government official in their individual capacity, a plaintiff must demonstrate some "real, personal involvement in the alleged constitutional violation.").

[136] *Rivas-Villegas v. Cortesluna*, 90 U.S. 1, 5 (2022) (citing *White v. Pauly*, 580 U.S. 73, 78-79 (2017)).

[137] *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted).

[138] *See Mack*, 522 P.3d at 451.

[139] *See e.g., Jackson v. City of Bremerton; Felarca v. Birgeneau.*

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

facts where an officer was found to violate an individual's constitutional rights by pushing the suspect to the ground to prevent the individual's attempt to physically obstruct a lawful arrest. Thus, at a minimum, Officer Garcia is entitled to qualified immunity on plaintiff's § 1983 excessive force claim.[140]

### B.   PLAINTIFF'S *MONELL* CLAIMS FAIL (SECOND CAUSE OF ACTION).

Plaintiff's second cause of action makes boilerplate *Monell* allegations LVMPD does not adequately train its officers and the alleged unconstitutional tactics used by Officer Garcia "were common by LVMPD officers . . . and such encounters were a recurring situation faced by LVMPD officers . . ."[141] Further, plaintiff asserts LVMPD ratified Officer Garcia's conduct by not disciplining him.[142]

### 1.   *Monell* legal standards.

In *Monell*, the Supreme Court held when a municipal policy of some nature is the cause of an unconstitutional action taken by municipal employees, the municipality itself will be liable.[143] Liability only exists where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental "custom" even though such a "custom" has not received formal approval.[144] The doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims against municipalities.[145] In other words, municipal liability is not established merely by showing that a municipal

---

[140] *See Shafer*, 868 F.3d at 111.

[141] ECF No. 10 at ¶¶33-41.

[142] *Id.* at ¶46.

[143] *Monell*, 436 U.S. at 658.

[144] *Id.*, at 690-91.

[145] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell*, 436 U.S. at 691).

MAC: 14687-511 (#5973635.2)

employee committed a constitutional tort while within the scope of employment.[146] For liability to attach to a municipality, a plaintiff must establish that the wrongful act complained of was somehow caused by the municipality.[147]

Municipal liability may be based on (1) an express municipal policy; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with force of law,'; or (3) the decision of a person with final policy making authority."[148] The alleged policy or custom must be the "moving force" for the constitutional violation in order to establish liability under § 1983.[149] Thus, for Plaintiff's *Monell* claim to survive, she must show (1) her constitutional rights were violated; (2) LVMPD's policy, practice, or training amounts to "deliberate indifference", and (3) the policy and training was "the moving force behind the constitutional violation."

The Ninth Circuit has explained a litigant may recover from a municipality under § 1983 on three different theories: commission, omission, or ratification.[150] "Commission" refers to a local government implementing its official policies or established customs when those polices or government's deliberate indifference to a constitutional right and includes, for example, the inadequate training of government officials. "Omission" refers to the government's omission to an official policy – such as a failure to train. "Ratification" refers to an authorized policymaker's purposeful approval of a subordinate's unconstitutional conduct.[151]

---

[146] *Id.* at 478-79.

[147] *Monell*, 436 U.S. at 691-95.

[148] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

[149] *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694).

[150] *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010).

[151] *Id.*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## 2. **Analysis of Plaintiff's *Monell* claim.**

First, if the Court has already concluded the officers did not violate the plaintiff's constitutional rights, then all the *Monell* claims fail as a matter of law.[152]

Second, with respect to the failure to train claim, plaintiff conducted no discovery on this claim and failed to generate a single other instance where a similar alleged constitutional violation occurred.[153] Plaintiff has never identified any specific training or policy that is inadequate or any other instance where an individual allegedly suffered a similar fate. Thus, plaintiff cannot meet the rigorous evidentiary requirement for her failure to train claim to get past summary judgment.[154]

Third, plaintiff's ratification claim finds no support in the evidentiary record. "A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions."[155] To show ratification, plaintiff must show "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.' "[156] "Ratification ... generally requires more than acquiescence."[157] Policymakers must make "'a deliberate choice to endorse' the officers' actions."[158] Liability based on a ratification

---

[152] *See City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the [constitutional violation] is quite beside the point."); *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1231 (9th Cir. 2013) (constitutional violation required to support *Monell* liability).

[153] *See Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (an inadequate training policy cannot be inferred from a single incident).

[154] *Board of County Comm'rs of Bryan City, Oklahoma vs. Brown*, 520 U.S. 397, 415 (1997) ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.").

[155] *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

[156] *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (*quoting Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)).

[157] *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014).

[158] *Id.* (*quoting Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992)).

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

theory may be based on a single incident "causally related to the constitutional deprivation."[159] Here, plaintiff alleges upon information and belief LVMPD policy makers ratify such alleged unconstitutional behavior. Because plaintiff conducted no discovery on the issue, the allegation is simply a conclusory statement. Such a conclusory statement, without any supporting evidence, is insufficient to defeat summary judgment.[160]

In short, plaintiff's *Monell* claims fail as a matter of law because no constitutional violation occurred, and, in the alternative, the plaintiff did not conduct any discovery or generate any evidence supporting the claim.

### C.    PLAINTIFF'S STATE LAW NEGLIGENCE CLAIM FAILS (FIFTH CAUSE OF ACTION).

Plaintiff's negligence claim alleges Officer Garcia "unlawfully and unjustifiably slammed [plaintiff] onto the ground . . . throwing another individual on top her; hitting [plaintiff] in her stomach; and causing [plaintiff's] breast to be exposed . . ."[161] First, it is already established Officer Garcia did not "throw[] another individual on top of [plaintiff]", he never hit plaintiff in the stomach, and he never caused her breast to be exposed. Thus, according to plaintiff's own complaint, her entire negligence claim is based on her allegation Officer Garcia "slammed her onto the ground . . ." Without specifics, plaintiff also suggests Officer Garcia acted negligently in his "tactical response" to the situation[162]

#### 1.    Nevada negligence law.

A claim for negligence requires a plaintiff to satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages.[163] A plaintiff's negligence claim cannot be based on an intentional act. *See* Restatement (Second) of Torts § 282 (1965), cmt.

---

[159] *Trevino v. Gates*, 99 F.3d 911, 918 n.2 (9th Cir. 1996).

[160] *See Segura v. City of La Mesa*, 647 F.Supp.3d 926, 939 (S.C. Cal. 2022) (collecting cases dismissing such allegations in a motion to dismiss posture).

[161] ECF No. 10 at ¶69.

[162] *Id.* at ¶71.

[163] *Turner v. Mandalay Sports Entertainment, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).

MAC: 14687-511 (#5973635.2)

d (stating that negligence "excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured or a third person").

A cause of action for negligence requires conduct that is not willful because willful conduct cannot be negligent.[164] The Nevada Supreme Court recently confirmed that an excessive force claim is the same as a 42 U.S.C. § 1983 Fourth Amendment excessive force claim.[165] Under § 1983, Fourth Amendment excessive force is an intentional tort because § 1983 does not recognize negligence as the basis for a claim.[166] And, in an excessive force claim against a police officer, a plaintiff cannot be awarded damages for both negligence and battery where the foundation for both claims is the alleged excessive force.[167] This is confirmed in the Restatement (Second) of Torts that states a negligent action cannot be based on intentional force.[168] Thus, stating an officer negligently inflicted intentional force is just another way of saying excessive force.[169]

### 2. **Analysis of plaintiff's negligence claim.**

#### a. **Plaintiff's allegation Officer Garcia negligently used intentional force is untenable as a matter of law.**

The Supreme Court of Nevada has not expressly addressed the issue of whether a police officer can be liable under a negligence theory based on the same facts as battery, excessive force, or other intentional act. Nevada federal district courts, however, relying on *Rocky Mountain Produce*, predict that the Nevada courts would so find because the Nevada

---

[164] *Rocky Mountain Produce Trucking Co. v. Johnson*, 369 P.2d 198, 201 (Nev. 1962).

[165] *Estate of Brenes v. Las Vegas Metro. Police Dep't.*, 136 Nev. 806 (2020) (unpublished) (applying *Graham* factors).

[166] *See Daniels v. Williams*, 474 U.S. 327, 328-36 (1986) (negligent actions or omissions by state officials are not actionable under § 1983).

[167] *See Odom v. District of Columbia*, 248 F.Supp.3d 260, 269; *Ryan v. Napier*, 245 Ariz. 54, 57, 425 P.3d 230, 233 (2018); *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305-10 (1986).

[168] *See* Restatement (Second) of Torts § 282 (1965), cmt. d.

[169] *District of Columbia v. Chinn*, 839 A.2d 701, 707 (2003); *See Odom*, 248 F.Supp.3d at 269; *Rocky Mountain Produce Trucking Co.*, 78 Nev. at 51, 369 P.2d at 201 (acts which are willful or intentional actions cannot also be negligent because negligence requires the absence of intent).

MAC: 14687-511 (#5973635.2)

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

Supreme Court has explained a "negligent person has no desire to cause the harm that results from his carelessness, and "he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm."[170] Most jurisdictions agree with this approach.[171] Here, Plaintiff's primary negligence claim involves Officer Garcia's split-second decision to push plaintiff backwards to thwart her attempts to obstruct the lawful arrest. Because there is no dispute the push was intentional, plaintiff's negligence claim on this issue must be dismissed.

### b. Plaintiff's negligence allegation Officer Garcia's decisions on how to tactically approach the situation are untenable as a matter of law.

Without any specifics, plaintiff's complaint alleges Officer Garcia used negligent tactics in approaching the situation. First, this claim fails because it is undisputed that, prior to Officer Garcia's pushing of plaintiff, he was lawfully at the property attempting to maintain the peace. There is nothing negligent about Officer Garcia responding to the club, positioning himself at the back of the house, or ordering individuals to exit a different way. In short, there is nothing negligent about Officer Garcia's pre-intentional push tactics.

Second, even if Officer Garcia did use poor tactics in approaching the situation, he would be immune for those decisions. Under Nevada law, generally a decision by a police officer on how to perform a seizure is discretionary and officers are, under NRS 41.032, entitled to discretionary immunity for any discretionary acts.[172] Only acts committed in bad

---

[170] *DeCastro v. Las Vegas Metro. Police Dep't*, 2024 WL 4189939, *22 (D. Nev. Sept. 12, 2024) (citing *Ryan v. Napier*, 245 Ariz. 54, 425 P.3d 230, 236 (Ariz. 2018)); *see also Wells v. City of Las Vegas,* 2024 WL 2028007, *16 (D. Nev. May 7, 2024) (same).

[171] *See City of Miami*, 672 So. 2d 46, 48 (Fla. Dist. Ct. App. 1996) ("Hence, we come to the inescapable conclusion that it is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional tort.'"); *Odom*, 248 F.Supp.3d at 269; *Ryan v. Napier*, 245 Ariz. 54, 57, 425 P.3d 230, 233 (2018); *Leibel v. City of Buckeye*, 364 F.Supp.3d 1027, 1045 (D. Az. 2019); *Scales v. District of Columbia*, 973 A.2d 722, 731 (D.C. 2009) ("[I]f, in a case involving the intentional use of force by police officers, a negligence count is to be submitted to the jury, that negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care").

[172] *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

faith or acts that violate the Constitution are not protected under discretionary immunity.[173] Thus, unless plaintiff can show Officer Garcia acted in bad faith or violated the Constitution, plaintiff's negligence claims fails as a matter of law. Here, there is no evidence of bad faith or even pre-push negligence. It is undisputed Officer Garcia was lawfully at the scene performing crowd control, his primary task involved dispersing the crowd and controlling the scene, and plaintiff created the unfortunate encounter by ignoring officers' lawful commands and unilaterally choosing to involve herself in a lawful police detention. At no point pre-push did Officer Garcia breach any duties owed to plaintiff or act in bad faith.

### D.    PLAINTIFF'S IIED CLAIM.

#### 1.    <u>IIED law.</u>

To prevail on a claim for IIED in Nevada, a plaintiff must prove that the defendant engaged in extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress or bodily harm.[174] To be extreme and outrageous, the conduct must be "outside all possible bounds of decency and regarded as utterly intolerable in a civilized community."[175] "[P]ersons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind."[176]

#### 2.    <u>Plaintiff has failed to generate any evidence of extreme or outrageous conduct.</u>

First, plaintiff's emotional distress claim is derivative and intertwined with her excessive force-based claims. As discussed above, Officer Garcia did not use unreasonable force and, therefore, did not engage in extreme or outrageous conduct.

Second, assuming *arguendo*, this court concludes that issues of material fact preclude summary judgment on the excessive force-based claims, there is no evidence of extreme or outrageous conduct. Admittedly, using force is a serious issue. However, police officers are

---

[173] *Falline v. GNLV Corp.*, 823 P.2d 888, 891-92 (Nev. 1991) (bad faith); *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) (unconstitutional).

[174] *Franchise Tax Bd. Of Cal. V. Hyatt*, 335 P.3d 125, 147 (Nev. 2014).

[175] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted).

[176] *Id.*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

tasked with the unenviable duty of making split-second decisions in rapidly evolving situations to protect the safety of both themselves and others. In this case, the video establishes Officer Garcia only used minimal force after plaintiff ignored his lawful commands and chose to obstruct a lawful arrest. No reasonable jury could find Officer Garcia's use of a low-level empty-hand force technique under these circumstances could be extreme and outrageous. Officer Garcia's pushes do not rise to the level of outrageous conduct that exceeds all bounds usually tolerated in a civilized society.

**V.    CONCLUSION**

Based on the above, Officer Garcia is entitled to summary judgment on all claims.

Dated this 10th day of September, 2025.

MARQUIS AURBACH

By _s/Craig R. Anderson_

Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendants LVMPD and
Officer Garcia

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **DEFENDANTS LAS VEGAS METROPOLITAN POLICE DEPARTMENT AND OFFICER GARCIA'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 10th day of September, 2025.

☒    I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒    I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: n/a

_s/Sherri Mong_

an employee of Marquis Aurbach

MAC: 14687-511 (#5973635.2)