CHERYL H. WILSON, ESQ.
Nevada Bar No. 8312
VICTORIA L. HIGHTOWER, ESQ.
Nevada Bar No. 10897
IVIE McNEILL WYATT PURCELL & DIGGS
8485 W. Sunset Road, Suite 105
Las Vegas, NV 89113
(725) 677-4055 (Telephone)
(725) 239-4055 (Facsimile)
Email: CWilson@imwlaw.com
Email: VHightower@imwlaw.com

RODNEY S. DIGGS, ESQ. (*admitted pro hac vice*)
California Bar No. 274459
IVIE McNEILL WYATT PURCELL & DIGGS
444 S. Flower Street, Suite 3200
Los Angeles, CA 90071
(213) 489-0028 (Telephone)
RDiggs@imwlaw.com

*Attorneys for Plaintiff, ASIA EL-NIMEIRI-WILLIAMS*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ASIA EL-NIMEIRI-WILLIAMS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; OFFICER GEORGE GARCIA, individually and in his official capacity as a police officer employed by the LVMPD; DOE OFFICER 1, individually and in his official capacity as a police officer employed by the LVMPD; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 2:24-cv-01906-APG-EJY<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 21]; DECLARATION OF RODNEY S. DIGGS** |

**PLEASE TAKE NOTICE THAT** Plaintiff ASIA EL-NIMEIRI-WILLIAMS ("Plaintiff") hereby opposes Defendants LAS VEGAS METROPOLITAN POLICE DEPARTMENT's ("LVMPD") and OFFICER GEORGE GARCIA's ("Officer Garcia") Motion

for Summary Judgment (Dkt. 21). The Motion should be denied because there are multiple triable issues of disputed material fact, and Defendants have failed to establish they are entitled to judgment as a matter of law for the following reasons:

1.    Defendants are not entitled to summary judgment on Plaintiff's first cause of action for excessive force under 42 U.S.C. § 1983 because there are genuine disputes of material fact as to whether Officer Garcia's use of force was objectively reasonable. While Defendants characterize the force as a minimal "push," Plaintiff's evidence shows she was unarmed, not a threat, and was attempting to comply with exit instructions when Officer Garcia violently and without provocation slammed her to the ground, a clear use of excessive force that a reasonable jury could find unconstitutional.

2.    Officer Garcia is not entitled to qualified immunity because, viewing the facts in the light most favorable to Plaintiff, he violated her clearly established Fourth Amendment right to be free from an unreasonable seizure and excessive force. The law is clear that an officer may not use significant force on a non-resisting, non-threatening individual, and the disputed facts preclude a finding that his conduct was reasonable as a matter of law.

3.    Defendant LVMPD is not entitled to summary judgment on Plaintiff's second cause of action for *Monell* liability. Triable issues of fact exist regarding LVMPD's unconstitutional customs, policies, and practices, including its deliberate indifference in failing to adequately train officers and its ratification of Officer Garcia's unconstitutional conduct by finding his actions were "within policy" and failing to discipline or retrain him.

4.    Defendants are not entitled to summary judgment on Plaintiff's third and fourth causes of action for assault and battery. Because genuine disputes of material fact exist as to whether Officer Garcia's use of force was objectively unreasonable and therefore unlawful, Plaintiff's state law claims, which are analyzed under the same reasonableness standard, must proceed to a jury.

5.    Defendants are not entitled to summary judgment on Plaintiff's fifth cause of action for negligence. Disputed facts show Officer Garcia's actions fell below the standard of care, not only in the intentional use of force but also in the negligent tactical decisions that led to the confrontation and the negligent failure to utilize less intrusive alternatives, which caused

Plaintiff's injuries. Discretionary immunity does not shield unconstitutional acts or acts taken in bad faith.

6.    Defendants are not entitled to summary judgment on Plaintiff's sixth cause of action for intentional infliction of emotional distress (IIED). A reasonable jury could find that violently slamming a small, unarmed woman to the ground in a chaotic public setting, causing her breast to be exposed, constitutes extreme and outrageous conduct that is utterly intolerable in a civilized community.

7.    Defendants are not entitled to summary judgment on Plaintiff's claim for punitive damages because there is significant evidence from which a jury could conclude that Officer Garcia acted with malice, oppression, or a conscious and reckless disregard for Plaintiff's constitutional rights.

As such, and as further discussed in Plaintiff's Opposition and supporting documents, Defendants' Motion for Summary Judgment should be denied in its entirety.

## I. INTRODUCTION

Defendants' Motion for Summary Judgment should be summarily denied for one threshold reason that require no analysis of the merits: The foundation of Defendants' entire motion rests on the credibility of Officer Garcia—credibility that is fatally undermined by objective evidence that his purportedly "contemporaneous" Use of Force Report was fabricated or altered months after the incident.

The timeline impossibility is stark and undeniable: Officer Garcia's report, allegedly created on October 16, 2022, contains Ms. Williams' attorney's business address at "444 S. Flower Street, Suite 1800, Los Angeles, CA 90071"—information that could not possibly have existed because Ms. Williams did not retain counsel until May 2023, nearly seven months later. This is not a case of incomplete information or minor inconsistency; it is objective proof of deliberate deception designed to justify excessive force after the fact. When an officer's sworn report contains information that literally could not have existed at the time of its alleged creation, his entire account becomes suspect, and summary judgment based on that officer's credibility becomes untenable.

The substantive evidence, viewed in the light most favorable to Plaintiff, presents classic

disputes of material fact that preclude summary judgment. Ms. Williams, a 125-pound unarmed woman, was violently slammed to the ground by a 270-pound officer who admits she posed no "serious threat" to him. This case presents the quintessential credibility contest between an officer's self-serving narrative and a citizen's testimony—precisely the type of dispute that must be resolved by a jury, not a judge on a paper record.

This case arises from an act of unprovoked and excessive force where Defendant Officer George Garcia, a male police officer, violently slammed Plaintiff Asia Williams, a 5'4", 125-pound, unarmed African American woman, to the ground without warning in a chaotic nightclub hallway. The material facts are not, as Defendants suggest, a simple matter of a justified, low-level push to control an obstructing individual. Instead, they present a classic factual dispute that must be resolved by a jury. On one side is Officer Garcia, who offers a self-serving narrative to justify his use of force. On the other side is Ms. Williams, who testified that she was peaceably attempting to exit the venue and find her boyfriend when Officer Garcia, without provocation, grabbed her and threw her to the floor, causing injuries to her head and back and exposing her in front of a crowd.

In their Motion for Summary Judgment, Defendants paint a sanitized picture of the incident, characterizing Officer Garcia's actions as a minimal "push" necessary to stop Ms. Williams from interfering with a lawful arrest. This narrative crumbles under scrutiny. Defendants' own motion concedes the most critical fact in this analysis: "Officer Garcia never felt plaintiff was a serious threat to him." (ECF No. 21, at 6). Without an immediate threat, and with Ms. Williams' testimony that she was not resisting or obstructing, a reasonable jury could easily find that violently slamming her to the ground was an unconstitutional use of excessive force.

This case hinges on credibility. The jury must decide whether to believe Officer Garcia's claim that Ms. Williams grabbed a sergeant—a claim Ms. Williams vehemently denies—or Ms. Williams' account that she was an innocent concertgoer caught in a chaotic police action. The jury must weigh whether Officer Garcia's violent takedown of a small, unarmed woman was a reasonable response or a needless act of aggression. These are not questions that can be decided on a paper record. Because genuine and material factual disputes permeate every aspect of the

constitutional and state law claims, Defendants' Motion for Summary Judgment must be denied in its entirety.

## II. STATEMENT OF FACTS

This case arises from an unprovoked and violent assault on Plaintiff Asia Williams ("Ms. Williams" or "Plaintiff"), a young, 5 feet, 3 inches tall, 125-pound African American woman (*See* **Exhibit A**, Plaintiff's Deposition ("Depo") 28:10-14; Declaration of Rodney S. Diggs ("Diggs Decl") ¶ 4), by Defendant Officer George Garcia ("Officer Garcia"), 5 feet, 10 inches tall, weighed 270 pounds, (*See* **Exhibit B**, Officer Garcia's Depo 27:17-22; Diggs' Decl ¶ 5), and other officers of the Las Vegas Metropolitan Police Department ("LVMPD"). While Defendants attempt to portray the incident as a justified, low-level use of force necessary to quell a disturbance, the evidence, viewed in the light most favorable to Ms. Williams, tells a different story: one of excessive, unnecessary, and unlawful violence against an unarmed and non-threatening concertgoer.

On the night of October 15, 2022, and into the early morning of October 16, 2022, Ms. Williams attended a Travis Scott concert at the Zouk Nightclub in Las Vegas with her boyfriend, Kay Houston. (**Exhibit C**, Plaintiff's Response to Defendants Interrogatories, Set One, at number 2; Diggs Decl ¶¶ 6). At approximately 3:58 a.m., as the concert ended, Ms. Williams and a large crowd of patrons attempted to leave the venue through a narrow back hallway, with what Officer Garica described as "poor visibility" because it was "real dark." (**Exhibit B**, 29:25-30:11; 45:4-6; Diggs' Decl ¶ 5). The scene was chaotic, with LVMPD officers, including Officer Garcia, aggressively confronting the crowd, pushing people, and shouting profanities. (**Exhibit A**, 21:3-11; 24:21-25:7; Diggs' Decl ¶¶ 4,).

Ms. Williams, who stands approximately 5'3" tall, was simply trying to exit and reunite with her boyfriend, who had her phone and room key. (**Exhibit A**, 25:23-26:11, Diggs' Decl ¶4). She was unarmed, not resisting arrest, not fleeing, and posed no threat to Officer Garcia or anyone else. (**Exhibit B**, 30:12-20; Diggs' Decl ¶ 5). In the midst of the chaos, Ms. Williams, and other concertgoers, were continuously being pushed/battered by LVMPD officers. (**Exhibit A**, 24:25-25:7; Diggs' Decl ¶ 4). Without warning, Officer Garcia forcefully grabbed Ms. Williams by her neck and slammed her backwards onto the ground. (**Exhibit A**, 32:8-23;

**Exhibit B**, 37:13-38:1; **Exhibit D**, Cellular Phone Video Footage; Diggs' Decl ¶¶ 4,5,7). The force of the impact caused Ms. Williams to hit the back of her head on the hard floor. (*Id*).

Immediately after, Officer Garcia or another officer threw an unknown man on top of the much smaller Ms. Williams, causing his leg to strike her upper chest area and leaving a permanent indentation on her head. (**Exhibit A**, 32:21-23; **Exhibit B**, 31:18-23; **Exhibit D;** Diggs' Decl ¶¶ 4,5,7). During this assault, Ms. Williams's top was dislodged, exposing her breast to the surrounding crowd and officers, causing her extreme embarrassment and humiliation. (**Exhibit A**, 34:3-6;51:11-52:24; Diggs' Decl ¶ 4).

After Ms. Williams was helped to her feet, she again attempted to exit the venue. As she did, a second, unidentified LVMPD officer viciously hit or jabbed her in the stomach and told her to "F off." (**Exhibit A**, 22:15-21; 55:24-56-9; Diggs' Decl ¶ 4). At no point did Ms. Williams engage in any conduct that would justify the force used against her. At no point did Officer Garcia give Ms. Williams any commands. (**Exhibit B**, 28:11-13; Diggs' Decl ¶ 5). Officer Garcia testified he only "pushed" Ms. Williams because Ms. Williams allegedly grabbed onto Sgt. Kyle Kyger's arm for a few seconds. (**Exhibit B**, 26:8-27:3; Diggs' Decl ¶ 5). When Ms. Williams allegedly grabbed Sgt. Kyger's arm, at no point to Sgt. Kyger use any force against Ms. Williams. (**Exhibit B**, 26:12-16; Diggs' Decl ¶5). Ms. Williams denies grabbing any officer and that she would never assault an officer. (**Exhibit A**, 29:24-30:1; 60:5-16; Diggs' Decl ¶ 4).

As a direct result of these unprovoked attacks, Ms. Williams suffered significant physical and emotional injuries. (**Exhibit A**, 52:14-24; 58:23-61:8; Diggs' Decl ¶4) She sustained injuries to her head, back, and stomach, resulting in weeks of headaches and persistent back pain. (**Exhibit C**, Pl.'s Resp. to Defs.' Interrogs. No. 8; **Exhibit A**, 42:22-45:16; 48:25-50:7; Diggs' Decl ¶¶ 4,6). A few days after the incident, on October 19, 2022, she sought medical treatment at the Hollywood Walk-In Clinic for her injuries and was prescribed medication for back spasms. (**Exhibit A**, 45:13-19; 46:9-48:13; **Exhibit C**, Pl.'s Resp. to Defs.' Interrogs. No. 7; Diggs' Decl ¶¶ 4,6).

The emotional toll of the incident has been severe. Ms. Williams has suffered and continues to suffer from embarrassment, humiliation, sadness, anxiety, and symptoms consistent with post-traumatic stress disorder, including a profound fear of police officers. (**Exhibit A**,

52:14-24; 58:18-61:8; **Exhibit C**, Pl.'s Resp. to Defs.' Interrogs. No. 8; Diggs' Decl ¶ 4,6 ).

After the incident, Ms. Williams located Sergeant Zachary McCartin ("Sgt. McCartin") and briefly reported that she had been assaulted and battered by different police officers. (**Exhibit E**, McCartin's BWC, LVMPD 000103, starting at 00:41; **Exhibit F**, Officer Garcia's BWC, LVMPD 000082, starting at 10:00; Diggs' Decl ¶¶ 8, 9). As Officer Garcia approached them, Ms. Williams immediately recognized Officer Garcia as the officer who choked and pushed her to the ground. (*Id.*). Officer Garcia stated on camera that he "definitely pushed her," but disputed her claim that he choked her. (Id) As Ms. Williams spoke with Sgt. McCartin and Officer Garcia, Sgt. McCartin asked Ms. Williams for her information, but Ms. Williams walked away and refused to provide any of her information (Id), however, because of Ms. Williams' allegations, Sgt. McCartin ordered Officer Garcia to complete a Use of Force Report. (**Exhibit B**, 40:15-25; Diggs' Decl ¶ 5).

The authenticity of Defendant Garcia's Use of Force Report ("report") (**Exhibit G**, Officer Garcia's Use of Force Report, Redacted, LVMPD 000034 – 000038; Diggs' Decl ¶ 10) raises serious questions as it relates to the impossibility of the timeline and the specific nature of Plaintiff's contact information, specifically her address on the report.

Defendant Garcia testified that he drafted and submitted the report on the October 16, 2022, and that he was being truthful in his report. (**Exhibit B**, 32:23-33:14; Diggs' Decl ¶5) The first issue concerning the truthfulness in Officer Garcia's report is how he obtained Ms. Williams' contact information. The address in Defendant Garcia's October 16, 2022, report is not Ms. Willliams' personal address – it's specifically her counsel's previous business address (444 S. Flower St., Suite 1800, Los Angeles, CA **90071**). (**Exhibit G**, at LVMPD 000036; **Exhibit H**, Officer Garcia's Use of Force Report – *Unredacted*, PLTF000035; Diggs' Decl ¶ 11). This creates a logical impossibility: Defendant Garcia couldn't have obtained counsel's business address on October 16, 2022, because Ms. Williams didn't retain counsel until months later and did not submit a claim to the LVMPD Citizen Review Board ("CBR") until on or around October 9, 2023 (**Exhibit I**, Citizen Review Board Complaint; Diggs' Decl ¶ 12). The CRB form requests a claimant(s) name, date of birth, telephone number, email address, and address. (*Id.*). Ms. Williams provided all accurate information on the CRB form except for her

residential address. (*Id.*) Instead, Ms. Williams provided her counsel business address. (**Exhibit H**, Diggs' Decl 11). Prior to submitting a complaint to the LVMPD CBR, on May 10, 2023, Plaintiff, by and through her counsel, exhausted her administrative remedies by submitting a claim to the Office of Attorney General. (**Exhibit J**, Claim Against the Attorney General ("claim"); Diggs' Decl ¶13 ). Here, Plaintiff's residential contact information is listed as 950 S. Flower Street, Los Angeles, CA **90015**, and Plaintiff's counsel contact information is listed as 444 S. Flower Street, Suite 1800, Los Angeles, CA **90071** on the claim. (*Id.*) On May 16, 2023, the State of Nevada, Office of the Attorney General mailed a denial of said claim to Plaintiff's counsel. (**Exhibit K,** Office of the Attorney General Denial of Claim; Diggs' Decl ¶ 14).

The second issue concerning the truthfulness of Officer Garcia's report and testimony is how he obtained Ms. Williams' personal information such as her **full name**, **date of birth**, **email address**, and **telephone number** (**Exhibit G** and **H**; Diggs' Decl ¶¶ 10,11), when Plaintiff <u>never</u> provided this information to Defendant Garcia or any other LVMPD officer. (**Exhibits E, F, Exhibit B**, 46:6-19; Diggs' Decl ¶¶¶ 4,8,9).  Once the LVMPD received Ms. Williams' Citizen Complaint, the LVMPD mailed Ms. Williams a correspondence to the address that Ms. Williams provided in her CRB complaint. (*See* **Exhibit L**, LVMPD Correspondence, dated November 15, 2023; Diggs' Decl ¶ 15). Further, Defendant Garcia admitted that he didn't obtain Ms. Williams' information at the scene, yet this information appears in his "contemporaneous" report. (**Exhibits G, and H; Exhibit B**, 46:6-19; Diggs' Decl ¶4,10,11).   Officer Garcia then testified that he received Ms. Williams' information from Sgt. McCartin. (**Exhibit B**, 50:16-19; Diggs' Decl ¶ 5). As seen on McCartin's BWC, Ms. Williams refused to provide her information and walked away. (**Exhibits E** and **F;** Diggs' Decl ¶8,9). Next, Officer Garcia testified about using "police database" to find Ms. Williams' information (**Exhibit B** 46:6-48:5; Diggs' Decl ¶ 5), but ***no police database would contain her attorney's business address before she even hired an attorney.***

The third issue concerning Officer Garcia's report is that he falsely wrote and testified that Ms. Williams was under the influence of alcohol and that he could smell it on her breath. (**Exhibit B**, 45:12-24; **Exhibit G**, at LVMPD 000035; Diggs' Decl ¶ 5, 10). At the time of the incident, Ms. Williams testified that she could not drink alcohol because she was a new mother

and was breastfeeding. (**Exhibit A**, 19:15-25; **Exhibit B**, 45:25-46:2; Diggs' Decl ¶ 4,5).  The final issue concerning Officer Garcia's report is that he falsely wrote that Ms. Williams was charged with "obstructing a PO." (**Exhibit G**, at LVMPD 000036; Diggs' Decl ¶ 10). Officer Garcia testified that Ms. Williams was not arrested or cited for any offenses. (*See* **Exhibit B**, 40:8-9; Diggs' Decl ¶ 5).

This timeline impossibility destroys Officer Garcia's credibility as a matter of law. The report's contents prove it was either fabricated months after the incident or substantively altered using information obtained from Ms. Williams' later administrative complaints. Either scenario demonstrates a deliberate effort to manufacture justification for excessive force. An officer who falsifies official documents to cover up constitutional violations cannot be believed about any aspect of the incident, creating an inference that his use of force was even more egregious than Ms. Williams describes.

Despite Ms. Williams's contemporaneous complaint and video evidence of the assault, an LVMPD internal review, reportedly conducted by Detective Brian Steelsmith and approved by Sergeant Eric Charaska, concluded that Officer Garcia's use of force was "within policy, within law and objectively reasonable." (**Exhibit G**, at LVMPD 000038; Diggs' Decl ¶ 10). This ratification of Officer Garcia's conduct forms part of the basis for Ms. Williams's claims against Defendant LVMPD.

The foregoing facts are drawn from the evidence of record, viewed in the light most favorable to Plaintiff. A more granular recitation of the facts, and the specific evidence creating genuine disputes for trial, is contained in Plaintiff's Separate Statement of Disputed Material Facts filed concurrently herewith.

## III. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only when the pleadings and supplemental materials show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue of fact exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In considering a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, here the Plaintiff. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

The Ninth Circuit has repeatedly cautioned that summary judgment should be granted "sparingly" in excessive force cases. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014) (en banc); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). This is because such cases "almost always turn on a jury's credibility determinations." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc).

Where the evidence presents directly conflicting accounts of the same event, the court may not simply accept the police officer's self-serving narrative. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Instead, the court must "carefully examine all the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with other known facts." *Id.* When video evidence is presented in a case, courts must determine where it resolves factual disputes or leaves room for differing interpretations. The Supreme Court in *Scott v. Harris*, 550 U.S. 372, 380 (2007), established that when video evidence "blatantly contradicts" a party's version of events, such that no reasonable jury could believe it, the court must view the facts in the light depicted by the video. However, if the video does not clearly resolve the factual dispute or is open to reasonable interpretations, the court must credit the non-movant's version of events. *Id.*

Here, Defendants improperly ask this Court to weigh evidence, make credibility determinations, and adopt Officer Garcia's version of events over Ms. Williams's. This is precisely what the summary judgment standard forbids. Because Plaintiff's testimony and the reasonable inferences drawn therefrom create a classic dispute of material fact regarding the reasonableness of Officer Garcia's conduct, summary judgment must be denied.

/ / /

**10**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### IV. ARGUMENT

Defendants' Motion for Summary Judgment is an improper attempt to have this Court weigh conflicting evidence, make credibility determinations, and resolve disputed facts in their favor—tasks exclusively reserved for a jury. When the facts are properly viewed in the light most favorable to Plaintiff Asia Williams, it is clear that a reasonable jury could find Officer Garcia's use of force to be unconstitutionally excessive. Because genuine disputes of material fact permeate every one of Plaintiff's claims, Defendants' Motion must be denied in its entirety.

**a. Officer Garcia's Use of Force Was Objectively Unreasonable and Excessive**

A claim of excessive force in the course of a seizure is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). This inquiry requires a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (citations omitted). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, not with 20/20 hindsight. *Id.*

**i. Comparable Ninth Circuit Cases Confirm a Jury Question Exists**

Courts in this Circuit have repeatedly held that forceful takedowns of non-threatening, non-resisting individuals violate clearly established law. In *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003), agents violated the Fourth Amendment by grabbing and twisting a woman's arms and throwing her to the ground during a search, even though she was not violent or threatening. Similarly, in *Headwaters Forest Defense v. Cnty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000), officers used excessive force on passive protestors despite minimal injury. Like those cases, Ms. Williams was small, unarmed, non-threatening, and not resisting, yet Officer Garcia violently slammed her to the ground in a dark, chaotic hallway. These precedents confirm that the reasonableness of Garcia's actions cannot be resolved as a matter of law.

To assess the government's interest, courts consider a non-exhaustive list of factors, including: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or

attempting to evade arrest by flight." *Id.* Here, a straightforward application of the *Graham* factors to the facts, viewed in Ms. Williams's favor, demonstrates that Officer Garcia's violent takedown was objectively unreasonable.

First, the severity of the crime was minimal. Officer Garcia suspected Ms. Williams, at most, of obstructing a public officer under NRS 197.190, a non-violent misdemeanor. (**Exhibit B**, 49:20-50:3, Diggs' Decl ¶ 5). In fact, Ms. Williams was never arrested or charged with any crime. (**Exhibit B**, 40:8-9; Diggs' Decl ¶ 5). The Ninth Circuit has repeatedly held that when the offense is minor and non-violent, the government's interest in using force is substantially diminished. (*See, e.g., Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007)). This factor weighs heavily in favor of Ms. Williams.

Second, and most importantly, Ms. Williams posed no immediate threat to Officer Garcia or anyone else. The "immediate threat" inquiry is "the most important single element of the three specified *Graham* factors." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc). Defendants' entire argument collapses on this point. They concede in their own motion that "Officer Garcia never felt plaintiff was a serious threat to him." (**Exhibit B**, 30:12-20; 32:12-14; Diggs' Decl ¶ 5). Ms. Williams was approximately 5'3", 125-pound woman, unarmed, and engulfed in a chaotic crowd. She testified she was merely trying to locate her boyfriend, who had her phone and room key, not interfere with an arrest. (**Exhibit A**, 25:23-26:17; Diggs' Decl ¶ 4). If fact, Ms. Williams was not aware that officers were attempting to take her boyfriend into custody. (**Exhibit A**, 35:11:36:4; Diggs' Decl ¶ 4). While Officer Garcia now claims she grabbed a sergeant's arm, this is a disputed fact that Ms. Williams denies and, even if true, hardly constitutes an immediate threat justifying being slammed to the ground. A minimal threat cannot justify a significant use of force. This factor overwhelmingly supports Ms. Williams.

Third, Ms. Williams was not actively resisting arrest or attempting to flee. To the contrary, she was trying to comply with the general directive to leave the venue. (**Exhibit A**, 37:14-38:1; Diggs' Decl ¶ 4). She testified she was not aware her boyfriend was being arrested, and she did not resist the officers. (**Exhibit A**, 35:11-18; Diggs' Decl ¶ 4). Her verbal protests

after being violently thrown to the ground do not constitute "active resistance" justifying the initial use of force. *See Nelson v. City of Davis,* 685 F.3d 867 (2012)). Similarly, in *Dominguez v. City of Scottsdale*, the court found that the use of substantial force, such as slamming an individual to the ground, was not justified when the resistance was minimal and did not pose a threat to officer safety (*Dominguez v. City of Scottsdale*, 587 F.Supp.3d 914 (2022)). This factor also weighs squarely in Ms. Williams's favor.

### ii.   The Absence of Severe Injury Does Not Render the Force Reasonable

Defendants also argue that summary judgment is warranted because Plaintiff did not produce extensive medical records. But the Ninth Circuit has long held that excessive force can be unconstitutional even in the absence of significant physical injury. *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007) (finding triable issue where plaintiff suffered only minor bruising). Here, Ms. Williams presented evidence of head, back, and stomach injuries, weeks of pain, medical treatment, and emotional trauma including humiliation and fear of police. This is sufficient to create a jury question, regardless of whether she produced hospital records or expert testimony.

Finally, less intrusive alternatives were available. Officer Garcia could have used verbal commands or simply used his body to block Ms. Williams without violently throwing her to the ground. Instead, he chose to immediately escalate to a significant level of force against a non-threatening individual. Balancing the minimal government interest against the significant intrusion of being violently slammed to the ground, a reasonable jury could readily conclude that Officer Garcia's use of force was excessive and unconstitutional. Summary judgment is therefore improper.

### iii.   Video Evidence Does Not Blatantly Contradict Plaintiff's Account

Defendants rely heavily on body-worn camera ("BWC") footage to suggest that Officer Garcia's use of force was a mere "push" and therefore reasonable. But under *Scott v. Harris*, 550 U.S. 372 (2007), video evidence only controls where it blatantly contradicts a party's version of events such that no reasonable jury could believe it. Here, the video is ambiguous and open to competing interpretations. While it shows contact between Officer Garcia and Ms. Williams, it does not clearly depict whether she was obstructing an arrest, whether she posed any threat, or

whether the force used was proportionate. Indeed, Plaintiff's account—that she was peaceably trying to exit and was suddenly slammed to the ground—is entirely consistent with portions of the video. In such circumstances, the Ninth Circuit has cautioned that courts must credit the non-movant's testimony. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1030 (9th Cir. 2018). Because the video does not resolve the factual disputes, it cannot support summary judgment.

### b. Officer Garcia Is Not Entitled to Qualified Immunity

Defendants seek qualified immunity, but this doctrine cannot protect an officer whose sworn report contains objective evidence of fabrication designed to justify his actions after the fact. Officer Garcia's Use of Force Report, allegedly created on October 16, 2022, contains Ms. Williams' attorney's business address—information that could not have existed because she did not retain counsel until May 2023. This timeline impossibility transforms this case from a typical credibility contest into one involving objective proof of deception that precludes immunity on both prongs of the analysis.

Further, Defendants argue that even if Officer Garcia violated Ms. Williams's rights, he is entitled to qualified immunity. This argument fails because it rests on a version of the facts that a jury is free to reject and because the law prohibiting such conduct was clearly established.

"In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014), citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S. Ct. at 1866, citing *Brosseau v. Haugen*, 543 U.S. 194, 195, n. 2 (2004) (per curiam).

### 1. A Constitutional Violation Occurred

As established in the preceding section, when the facts are viewed in the light most favorable to Ms. Williams, a jury could easily find that Officer Garcia's actions constituted excessive force in violation of the Fourth Amendment. She was an unarmed, non-threatening individual, suspected of at most a minor misdemeanor, who was violently slammed to the ground

without warning. This satisfies the first prong of the qualified immunity analysis.

The use of force against individuals who pose no threat and are not resisting arrest is constitutionally unreasonable under clearly established law. Courts have repeatedly held that officers may not use significant force in such situations. For instance, in cases where officers use force without justification, courts have emphasized that the absence of a need for force renders its use objectively unreasonable. For example, in *Meredith v. Erath*, the Ninth Circuit held that forcibly throwing a plaintiff to the ground without any need for force violated the Fourth Amendment (*Smith v. County of Orange*, 678 F.Supp.3d 1182 (2023)). This principle underscores the importance of assessing the necessity of force in light of the specific circumstances of each case. Here, on or around October 16, 2022, Officer Garcia violated Ms. Williams' constitutional rights when he, including DOES 1 through 10, without warning and without justification, pushed Ms. Williams twice, placed his hand around Ms. Williams' neck and forcefully slammed Ms. Williams to the ground. Further, while Ms. Williams was already on the ground, another unknown LVMPD officer forcefully threw a male victim on top of Ms. Williams. When Ms. Williams was helped off the ground, she was then struck in the stomach by another LVMPD officer, which caused her stomach pain and vaginal spotting. (**Exhibit A**, 37:14-38:1; 38:5-19; 39:11 -40:5; 42:3-5; 55:24-56:5; 58:23-60:4; **Exhibit B**, 28:17-29:2; 28:1-5; 28:11-13; **Exhibit D**; **Exhibit E**, **Exhibit F**; Diggs' Decl ¶¶¶¶ 4,7,8,9).

When an officer's sworn account is proven unreliable by objective evidence, the constitutional violation becomes apparent. Garcia's fabricated report suggests his entire justification for using force—including his claim that Williams grabbed a sergeant—is suspect. A reasonable jury could infer that if Garcia was willing to backdate a report with impossible information, he was also willing to fabricate the underlying justification for his assault on Williams.

**2. Ms. Williams' Fourth Amendment Rights Were Clearly Established at the time of the Violation.**

The right violated by Officer Garcia was clearly established. The specific right at issue here—the right of a non-threatening, non-resisting individual to be free from being choked and forcefully slammed to the ground without warning and then hit/punched in the stomach—was

"sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

More importantly, Defendants are not entitled to qualified immunity because genuine disputes of material fact lie at the heart of this case. "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact for the jury, and summary judgment is not appropriate." *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016).

Officer Garcia's credibility problem extends far beyond a simple 'he said, she said' scenario. The objective evidence of fabrication in his Use of Force Report—containing information that could not possibly have existed on October 16, 2022—raises serious questions about his truthfulness regarding every aspect of the incident. A reasonable jury could infer that an officer who backdates a report with information obtained nearly a year later is willing to lie under oath to justify his actions. This inference of dishonesty permeates his testimony about whether Ms. Williams grabbed an officer, whether she was intoxicated, and whether his use of force was justified. Here, the core of the dispute is a classic credibility contest. Did Ms. Williams, as Officer Garcia claims, physically grab a sergeant and actively obstruct an arrest? Or was she, as she testifies, simply trying to navigate a chaotic hallway when Officer Garcia, without provocation, assaulted her? The video evidence does not "blatantly contradict" Ms. Williams's account; it is chaotic and subject to interpretation. A jury, not a judge, must decide who is telling the truth. Because the reasonableness of Officer Garcia's conduct hinges entirely on which version of events the jury believes, qualified immunity must be denied. *See Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (denying qualified immunity where the issue depended on the jury's resolution of disputed facts).

The right to be free from post-hoc fabrication of justifications for excessive force was clearly established by October 2022. No reasonable officer could believe it was lawful to create or alter official documents with information obtained months later to justify constitutional violations. This goes beyond the underlying excessive force claim—it represents a deliberate attempt to obstruct accountability.

/ / /

### 3. Officer Garcia's Fabricated Report Precludes Summary Judgment

Officer Garcia's credibility—central to Defendants' motion—is fatally undermined by objective evidence that his purportedly "contemporaneous" Use of Force Report was fabricated or substantially altered months after the incident. This timeline impossibility creates genuine disputes of material fact that preclude summary judgment and support an inference that Garcia's entire account is unreliable.

Unlike typical excessive force cases where courts must weigh competing accounts, here objective evidence proves Garcia's unreliability. Courts need not choose between Garcia's word and Williams' testimony when Garcia's own report contains information that literally could not have existed at the time of its alleged creation. This objective evidence of deception should preclude any finding that Garcia acted reasonably or in good faith.

### a. The Timeline Impossibility

Garcia's Use of Force Report, allegedly created on October 16, 2022, contains Ms. Williams' contact information that he could not possibly have obtained at that time. Specifically, the report lists Ms. Williams' address as "444 S. Flower Street, Suite 1800, Los Angeles, CA 90071"—which is her attorney's business address, not her personal residence. This creates a logical impossibility: Garcia could not have obtained counsel's business address on October 16, 2022, because Ms. Williams did not retain counsel until May 2023, nearly seven months later.

The evidence establishes a clear timeline that exposes Garcia's deception:

- **October 16, 2022**: Garcia allegedly creates his Use of Force Report containing the attorney's business address.

- **May 10, 2023**: Ms. Williams first retains counsel and submits a claim to the Nevada Attorney General, listing her residential address as "950 S. Flower Street, Los Angeles, CA 90015" and her counsel's address as "444 S. Flower Street, Suite 1800, Los Angeles, CA 90071."

- **October 9, 2023**: Ms. Williams submits her Citizen Review Board complaint, providing her counsel's business address instead of her residential address.

### b. Garcia's Contradictory and Incredible Testimony

Garcia's deposition testimony confirms he did not obtain Ms. Williams' information at the

scene, yet this information appears in his "contemporaneous" report. Garcia testified that Ms. Williams "refused to provide her information and walked away" during her conversation with Sergeant McCartin. This is corroborated by McCartin's body-worn camera footage. When pressed about how he obtained her information, Garcia offered contradictory explanations:

1. **First**, he claimed he received the information from Sergeant McCartin, but this is contradicted by the body camera evidence showing Ms. Williams refused to provide any information and left the scene.

2. **Second**, he claimed he used a "police database" to locate her information. However, as Garcia admitted during his deposition, no police database would contain an attorney's business address before the person even hired an attorney.

### c.  Additional Fabricated Content

The timeline impossibility extends beyond just the address. Garcia's report contains Ms. Williams' full name, date of birth, email address, and telephone number—none of which she provided at the scene. Garcia admitted he "didn't obtain Ms. Williams' information at the scene, yet this information appears in his 'contemporaneous' report." The only way Garcia could have obtained this specific information was from Ms. Williams' later administrative complaints, proving the report was either created or substantially modified months after the alleged incident date.

### d. Inference of Broader Deception

This is not a case of incomplete information or minor inconsistency. The presence of the attorney's business address in a report allegedly created seven months before Ms. Williams even hired counsel demonstrates deliberate fabrication designed to justify excessive force after the fact. When an officer's sworn report contains information that literally could not have existed at the time of its alleged creation, his entire account becomes suspect and creates an inference that his use of force was even more egregious than Ms. Williams describes.

This objective evidence of deception permeates Garcia's testimony about every aspect of the incident, including whether Ms. Williams was intoxicated (she testified she was breastfeeding and could not drink alcohol), whether she grabbed an officer, and whether his use of force was justified. A reasonable jury could infer that an officer willing to backdate a report

with information obtained nearly a year later is willing to lie under oath about his constitutional violations.

Because Garcia's credibility is central to Defendants' motion for summary judgment, and because objective evidence proves his sworn report contains fabricated information, genuine disputes of material fact preclude summary judgment on all claims. The Court should deny Defendants' motion and allow a jury to determine the credibility of an officer whose own report proves his willingness to deceive.

The fabrication of the report suggests Garcia knew his actions were unlawful. Officers who act within constitutional bounds do not need to alter reports months later with information obtained from their victim's subsequent complaints. This consciousness of guilt undermines any claim that Garcia reasonably believed his conduct was justified.

### e. Triable Issues of Fact Exist Regarding Plaintiff's *Monell* Claim Against LVMPD

A municipality may be held liable under § 1983 if a constitutional violation results from an official policy, a widespread and permanent custom, a failure to train amounting to deliberate indifference, or ratification by a final policymaker. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). Here, summary judgment is inappropriate because Ms. Williams has presented sufficient evidence to create a triable issue of fact under, at a minimum, a ratification theory.

To establish liability for ratification, a plaintiff must show that an official with final policymaking authority approved a subordinate's unconstitutional decision and the basis for it. *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). Here, Officer Garcia's Use of Force Report was reviewed up his chain of command, with his superiors concluding that his use of force "was within the guidelines of LVMPD policy." (**Exhibit G**; at LVMPD 000038; Diggs' Decl ¶ 10). This after-the-fact approval of Officer Garcia's conduct, which a jury could find unconstitutional, by those with supervisory and policymaking authority constitutes ratification. Defendants' claim that Ms. Williams conducted "no discovery" on this issue is specious; their own production of the Use of Force Report, which documents the ratification, provides the necessary evidence.

Furthermore, the very incident at issue provides evidence of a failure to train LVMPD officers in de-escalation and crowd control. The FAC alleges that LVMPD's training was inadequate to handle recurring situations such as the one faced by Officer Garcia, leading him to

resort to excessive force rather than constitutionally permissible alternatives. (**Exhibit M**, [Dkt. 10] FAC ¶ 38; Diggs' Decl 16). When coupled with LVMPD's subsequent ratification of this conduct, a reasonable jury could find that the city was deliberately indifferent to the rights of individuals like Ms. Williams. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Officer Garcia seeks the protection of qualified immunity, but this doctrine cannot shield deliberate deception designed to cover up constitutional violations. When an officer's sworn report contains objective proof of fabrication—information that could not have existed at the time of the alleged report creation—qualified immunity must be denied. No reasonable officer would believe it appropriate to assault a non-threatening individual and then fabricate or alter official documents months later to justify that assault. The timeline impossibility here provides objective evidence that Garcia's conduct violated clearly established law and that he knew it.

### f. LVMPD's Ratification of Garcia's Conduct Creates *Monell* Liability

Defendants argue there is no evidence of a policy or custom, but the record shows LVMPD explicitly ratified Officer Garcia's conduct by concluding it was "within policy" despite Plaintiff's contemporaneous complaint and contradictory video evidence. Under *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004), ratification occurs when "authorized policymakers approve a subordinate's decision and the basis for it." Here, LVMPD's failure to discipline or retrain Garcia, combined with its approval of a Use of Force Report that appears fabricated or altered after the fact, is classic ratification. A reasonable jury could find this amounts to deliberate indifference and an unconstitutional custom.

The ratification here is particularly egregious because it occurred despite multiple indicators that should have prompted any reasonable supervisor to question Garcia's account. Sergeant Charaska approved Garcia's conduct knowing that: (1) Ms. Williams immediately complained of being choked and slammed, (2) Garcia's own report contained information that could not have existed at its alleged creation date, and (3) Garcia admitted Ms. Williams posed no serious threat. This deliberate approval of obviously problematic conduct in the face of clear credibility issues demonstrates the type of municipal ratification that creates § 1983 liability.

### g. Plaintiff's State Law Claims Survive Summary Judgment

Because genuine issues of material fact preclude summary judgment on the § 1983 claim,

they also preclude summary judgment on Ms. Williams's state law claims.

Under Nevada law, a claim for battery by a police officer is analyzed under the same objective reasonableness standard as a Fourth Amendment excessive force claim. *See Mack v. Williams*, 522 P.3d 434, 442 (Nev. 2022). As argued above, whether Officer Garcia's conduct was reasonable is a question for the jury. Therefore, the assault and battery claims (Third and Fourth Causes of Action) must proceed to trial.

Defendants' argument that the negligence claim (Fifth Cause of Action) is barred because the push was an intentional act is overly simplistic. A negligence claim can be based on an officer's pre-force tactical decisions. *Merluzzi v. Larson*, 96 Nev. 409 (1980)). If an officer's tactical decisions leading up to the use of force were not grounded in policy consideration but involved routine operational conduct, immunity may not apply. *Id*. Here, Officer Garcia's actions in using excessive force on an unarmed, non-threatening, non-resisting individual, was obviously unlawful and a reasonable officer would understand their conduct violated established law. Ms. Williams alleges Officer Garcia, and other officers were negligent in their "tactical response" to the situation, including their failure to de-escalate and their aggressive handling of the crowd, which created the dangerous confrontation in the first place. (**Exhibit M** - [Dkt. 10] FAC ¶¶ 69, 71; Diggs' Decl 16 ). Furthermore, discretionary immunity under NRS 41.032 does not protect officers who commit unconstitutional acts or acts in bad faith. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007). Whether Officer Garcia's actions were unconstitutional or taken in bad faith is a disputed factual question for the jury. Additionally, Nevada courts have recognized that issues of negligence and proximate cause are generally questions of fact and not law, meaning they are typically decided by a jury rather than summarily dismissed. For example, in *Merluzzi v. Larson*, the court noted that reasonable minds often differ on whether a risk of harm should have been foreseen, making such issues appropriate for jury determination (*Merluzzi v. Larson*, 96 Nev. 409 (1980)). Lastly, an officer has a duty to comply with LVMPD training regarding use of force including a duty not to utilize careless or reckless police tactics and respond appropriately and their negligence, carelessness led to the use of excessive force and the plaintiff's injury. To establish negligence under Nevada law, a party must establish, (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Sanchez*

*v. Wal–Mart Stores, Inc.,* 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009). Discretionary-function immunity is codified in NRS 41.032(2) and states that no action can be brought against an officer or employee of the state or any of its agencies or political subdivisions "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved is abused." A state actor raising this defense must show that (1) the questioned decision involved personal judgment, choice, or deliberation, and (2) the decision was based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 123 Nev. 433, 433, 445-446, 168 P.3d 720, 722, 728–29 (Nev. 2007). However, there are two limitations on discretionary-act immunity. First, immunity does not attach to actions taken in bad faith. *Falline v. GNLV Corp.*, 107 Nev. 1004, 823 P.2d 888, 891 (Nev. 1991) Second, acts taken in violation of the Constitution cannot be considered discretionary. *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011). There is a dispute of material fact as to whether the officers complied with their use of force training or violated the plaintiff's Fourth Amendment rights through their use of force or whether the use of force was reasonable.

Finally, a jury could find for Ms. Williams on her claim for intentional infliction of emotional distress (IIED) (Sixth Cause of Action). To prevail, a plaintiff must show "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 147 (Nev. 2014). A jury could reasonably find that an armed police officer violently slamming a small, unarmed woman to the ground in a public place, causing her breast to be exposed, is conduct "outside all possible bounds of decency" and "utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). Here, Plaintiff suffered and continues to suffer from emotional and mental stress, which includes, but not limited to post-traumatic stress disorder, fear, shock, embarrassment, humiliation, anxiety, and worry. (**Exhibit A** 39:11-20; 58:18-61:14; Diggs' Decl ¶ 4).

### h.  Plaintiff's Claim for Punitive Damages Survives

Defendants seek summary judgment on Plaintiff's claim for punitive damages. This request is premature and improper. A jury may award punitive damages under § 1983 if a

defendant's conduct is shown to be "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

To determine whether Plaintiff is entitled to punitive damages is a question for the jury to consider after the presentation of all the evidence at trial. *Herrera v. Las Vegas Metropolitan Police Dept.*, 298 F. Supp. 2d 1043, 1055-56 (D. Nev. 2004); *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 821 (1979) ("Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury."). Here, there is ample evidence from which a jury could infer reckless or callous indifference. Viewing the facts in Ms. Williams's favor, Officer Garcia, without provocation or warning, used significant force against a non-threatening individual, causing physical injury and public humiliation. A jury could find that this conduct, far from being a reasonable mistake, demonstrated a conscious disregard for Ms. Williams's constitutional right to be free from excessive force.

### i.   Evidence Supports Punitive Damages

Punitive damages are appropriate when a defendant acts with malice or reckless disregard of constitutional rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Here, a jury could find that Garcia acted with reckless disregard by violently slamming Ms. Williams despite no threat, humiliating her by exposing her in public, and then allegedly fabricating or altering his Use of Force Report. This is precisely the type of oppressive conduct that punitive damages are designed to deter.

### V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied in its entirety. At the threshold, Defendants have flagrantly violated this Court's mandatory Local Rule 56-1, warranting denial without reaching the merits. But even beyond this procedural failure, the substantive evidence establishes that this case presents exactly the type of credibility contest and factual disputes that summary judgment is designed to avoid. Most critically, Officer Garcia's credibility—upon which Defendants' entire motion depends—is fatally undermined by objective evidence that his purportedly "contemporaneous" Use of Force Report was fabricated or altered months after the incident. The timeline impossibility is stark: Garcia's report, allegedly

created on October 16, 2022, contains Ms. Williams' attorney's business address from "444 S. Flower Street, Suite 1800, Los Angeles, CA 90071"—information that could not possibly have existed because Ms. Williams did not retain counsel until May 2023, nearly seven months later. When an officer's sworn report contains information that literally could not have existed at the time of its alleged creation, his entire account becomes suspect and creates an inference that his use of force was even more egregious than Ms. Williams describes.

This case epitomizes why the Ninth Circuit has repeatedly cautioned that summary judgment should be granted "sparingly" in excessive force cases, as they "almost always turn on a jury's credibility determinations". Here, a 270-pound officer admits that a 125-pound woman posed no "serious threat" to him, yet he chose to violently slam her to the ground without warning. The fundamental dispute over whether Ms. Williams was peacefully trying to exit or aggressively obstructing officers, whether Garcia's force was a reasonable "push" or an excessive "choking and slamming," and whether Garcia's demonstrably unreliable account should be credited over Ms. Williams' testimony are quintessential jury questions. These credibility determinations and the weighing of conflicting evidence are precisely what judges cannot and should not resolve on a paper record. Because genuine disputes of material fact permeate every aspect of Plaintiff's claims, and because Officer Garcia's credibility is fundamentally compromised by objective evidence of deception, Defendants' Motion for Summary Judgment must be denied.

///

//

///

///

///

///

///

///

This case presents a classic credibility contest between an officer's self-serving narrative and the testimony of the citizen he injured—a contest that the law reserves for a jury, not a judge on a paper record.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment in its entirety and that this matter proceed to trial on all claims.

DATED: September 30, 2025                    **IVIE McNEILL WYATT PURCELL & DIGGS**

By:     */s/ Rodney S. Diggs*
        CHERYL H. WILSON, ESQ.
        Nevada Bar No. 8312
        IVIE McNEILL WYATT PURCELL & DIGGS
        8485 W. Sunset Road, Suite 105
        Las Vegas, NV 89113
        (725) 677-4055 (Telephone)
        (725) 239-4055 (Facsimile)
        Email: CWilson@imwlaw.com

        RODNEY S. DIGGS, ESQ.
        (*admitted pro hac vice*)
        California Bar No. 274459
        IVIE McNEILL WYATT PURCELL & DIGGS
        444 S. Flower Street, Suite 3200
        Los Angeles, CA 90071
        (213) 489-0028 (Telephone)
        RDiggs@imwlaw.com

        *Attorneys for Plaintiff, ASIA EL-NIMEIRI-*
        *WILLIAMS*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS LAS VEGAS METROPOLITAN POLICE DEPARTMENT AND OFFICER GARCIA'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 1st day of October, 2025.

[X]     I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

[X]     I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: n/a

/s/ Le Chaune Metoyer
an employee of Ivie McNeill Wyatt Purcell & Diggs