**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
  Attorneys for Defendants LVMPD and Officer Garcia

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ASIA EL-NIMEIRI-WILLIAMS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; OFFICER GEORGE GARCIA, individually and in his official capacity as a police officer employed by the LVMPD; DOE OFFICER1, individually and in his official capacity as a police officer employed by the LVMPD and DOES 1 through 10, inclusive,<br><br>Defendants. | Case Number:<br>2:24-cv-01906-APG-EJY<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (ECF NO. 23)** |

Defendants Las Vegas Metropolitan Police Department ("LVMPD") and Officer George Garcia ("Officer Garcia" and collectively, "defendants"), by and through their counsel, Marquis Aurbach, hereby file their Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment. (ECF No. 23) This Reply is made and based upon the Memorandum of Points & Authorities, the pleadings and papers on file herein and any oral argument allowed by counsel at the time of hearing.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.     INTRODUCTION**

On September 10, 2025, defendants filed a motion for summary judgment on all

MAC: 14687-511 (#6054423.2)

claims ("Motion").[1] Plaintiff Asia El-Nimeiri-Williams ("plaintiff") timely opposed the motion on October 1, 2025 ("Opposition").[2] Defendants now reply.

Plaintiff frames this case as a credibility contest between her testimony, Officer Garcia's account and insists a jury must resolve it.[3] That framing ignores dispositive, contemporaneous video evidence that forecloses plaintiff's version. The body-worn camera ("BWC") footage depicts plaintiff yelling at officers, disregarding commands to stand back, and attempting to push through officers while they lawfully arrested her boyfriend, Kay Houston. These facts are not ambiguous in the videos. Under controlling precedent, when video "blatantly contradicts" a party's testimony such that no reasonable jury could credit it, courts must view the facts as the video depicts them and grant summary judgment where appropriate.[4] The videos here do just that.

When viewed against the governing standards, the record compels judgment for defendants on all claims. First, the brief, low-level, empty-hand force Officer Garcia used to stop plaintiff from interfering with a lawful arrest in a chaotic, crowded corridor was objectively reasonable under the Fourth Amendment. At a minimum, no clearly established law prohibited that minimal force in those circumstances, entitling Officer Garcia to qualified immunity. Second, plaintiff's *Monell* theory fails because she identifies no constitutional violation, no program-wide training deficiency, and no ratification by a final policymaker. Third, plaintiff's negligence claim fails because Nevada law does not recognize "negligent" use of intentional force and discretionary immunity bars her pre-force "tactical" theory absent evidence of bad faith, which is lacking. Fourth, the record does not support an intentional infliction of emotional distress claim because the conduct was not extreme or outrageous as a matter of law, and, in any event, plaintiff concedes the exposure

---

[1] ECF No. 21.

[2] ECF No. 23.

[3] ECF No. 23 at 4.

[4] *Scott v. Harris*, 550 U.S. 371, 380 (2007); *Hughes v. Rodriguez*, 31 4th 1211, 1218-19 (9th Cir. 2022).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-511 (#6054423.2)

she emphasizes was accidental.

Plaintiff devotes pages to arguing Officer Garcia purportedly "fabricated" or "altered" portions of his Use of Force Report.[5] That assertion, even if true, would not establish a stand-alone constitutional violation and[6], and, even if it did, plaintiff never pled the claim. Because plaintiff does not contend the videos themselves are inauthentic or inaccurate, they control at summary judgment in an excessive-force case. [7]

The Court should grant summary judgment on all claims.

## II.     THE UNDISPUTED FACTS AND GARCIA'S REPORT.

### A.     THE UNDIPSUTED FACTS.

The parties agree plaintiff attended a concert at Zouk Nightclub inside Resorts World in October 2022 and encountered police officers assisting security in a chaotic back-of-house corridor near closing.[8] The BWC and cellphone videos show the following material facts:

1.     Officers responded to a chaotic and uncontrolled dispersal. The hallway was narrow, dark, and crowded. A supervisor can be heard directing anyone not complying with dispersal orders would go to jail. [9]

2.     Officers began lawfully taking plaintiff's boyfriend, Houston, into custody.[10]

3.     Plaintiff yelled at officers, ignored commands to stand back, and attempted to insert herself into Houston's arrest, including making physical contact with officers.[11]

---

[5] ECF No. 23 at 3, 7-10, 14-18.

[6] *Williams v. Jurdon*, 2017 WL 3981405, at *3 (E.D. Cal. Sept. 11, 2017) ("To the extent Plaintiff's Fourteenth Amendment claim is based on alleged falsehoods in the police report, he is advised the filing of a false police report itself does not amount to a constitutional violation.") (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 744-45 (1st Cir. 1980)); *see also Moreno v. Idaho*, 2017 WL 1217113, at *16 n.20 (D. Idaho Mar. 31, 2017) (holding same); *McKinley v. United States*, 2015 WL 4663206, at *11 (D. Or. Aug. 5, 2015) (holding same).

[7] *Scott*, 550 U.S. at 380; *Hughes*, 31 F.4th at 1218-20.

[8] ECF No. 23 at 5.

[9] Garcia BWC (0358) T10:58:19Z, Ex. D.

[10] *Id.* at T10:58:58Z.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

   4. Officer Garcia moved to the line's front to block plaintiff from passing through to the arresting officers.[12]

   5. Plaintiff continued to try to push past officers while yelling and gesturing. Officer Garcia used brief, open-hand, forward shoves to move plaintiff backward and create space, warning her multiple times to stop and to back up.[13]

   6. Plaintiff's friend interposed and helped move plaintiff back as officers continued to direct the crowd.[14]

   7. When officers escorted a handcuffed Houston past, plaintiff followed him and the arresting officers away from the scene, ending her interaction with Officer Garcia.[15]

   These events unfolded in seconds amid a dense, uncooperative crowd. The videos are consistent across multiple BWC perspectives and a third-party cellphone recording. They do not depict a "violent slam" or "choke." To the contrary, they show a series of low-level, open-hand pushes calibrated to stop an actively intrusive bystander from breaching a police line during a lawful arrest.

   Plaintiff's attempt to sanitize the facts of her case in her favor is reminiscent of a similar tactic criticized by the Supreme Court in *Scott v. Harris*. That case involved a high-speed police chase. The Supreme Court chastised the lower court for ignoring the video evidence and setting forth an implausible version of events. The Court noted that "reading the lower court's opinion, one gets the impression that that respondent rather than fleeing from police, was attempting to pass his driving test."[16] The Supreme Court harshly rejected this tactic and stated "[t]he videotape tells quite a different story" and described the incident

---

[11] Garcia BWC (0358) T10:58:59Z; Christian BWC (0358) T10:58:55Z–T10:59:03Z; Atkinson BWC (0357) T10:58:45Z–T10:58:59Z; Kyger BWC (0358) T10:58:46Z–T10:58:58Z; Ex. D.

[12] Garcia BWC (0358) T10:59:00Z–T10:59:12Z; Ex. D.

[13] *Id.* T10:59:10Z–T11:00:48Z.

[14] *Id.* at T11:00:30Z–T11:01:02Z.

[15] *Id.* at T11:01:00Z–T11:01:20Z.

[16] *Scott*, 550 U.S. at 378-79.

MAC: 14687-511 (#6054423.2)

1 as "more closely resembl[ing] a Hollywood-style car chase of the most frightening sort, 2 placing police officers and innocent bystanders alike at great risk of serious injury."[17] In 3 other words, the mere fact this case is at the summary judgment stage does not mean 4 plaintiff can just misrepresent facts to the court to survive summary judgment.

### B. OFFICER GARCIA'S USE OF FORCE REPORT.

Plaintiff argues Officer Garcia's Use of Force Report was fabricated or altered because it includes certain personal information and an attorney address that she says could only have been learned months later.[18] That argument misses the mark for at least three reasons.

First, even if Officer Garcia's report contained inaccuracies or later-added identifying information, such alleged defects do not establish a constitutional violation. Courts have repeatedly held filing an inaccurate or false police report, without more, is not actionable under § 1983.[19] Plaintiff identifies no cognizable constitutional injury flowing from any purported reporting defect.

Second, plaintiff does not identify any material factual assertion in the report that conflicts with what the videos show. Her challenge to the report concerns how LVMPD obtained contact details and not what the video depicts occurred in the hallway. The videos, not the report, resolve the reasonable-force analysis under controlling precedents.[20]

Third, plaintiff's own theory underscores the report-credibility issue is immaterial at summary judgment. Plaintiff insists the Court must credit her account over Officer Garcia's.[21] But where videos exist and "blatantly contradict" a party's version of events,

---

[17] *Id*. at 379-80.

[18] ECF No. 23 at 3, 7-10, 14-18.

[19] See supra note 6.

[20] *Scott*, 550 U.S. at 380; *Hughes*, 31 F.4th at 1218-20.

[21] ECF No. 23 at 4, 10.

Page 5 of 14

MAC: 14687-511 (#6054423.2)

1 courts do not accept testimony no reasonable jury could believe.[22] The videos foreclose
2 plaintiff's description and, thereby, the premise the dispute turns on a report's drafting
3 history.
4     The Court should reject plaintiff's attempt to manufacture triable fact issues divorced
5 from the governing legal standards and the objective record.

### III. LEGAL ARGUMENT

#### A. PLAINTIFF'S § 1983 EXCESSIVE FORCE CLAIM AND RELATED NEVADA STATE LAW CLAIMS FAIL AS A MATTER OF LAW (FIRST, THIRD, AND FOURTH CAUSES OF ACTION).

##### 1. Defendants' Motion,

Defendants' Motion argues plaintiff's § 1983 excessive force claim and her state law assault and battery claims fail because Officer Garcia used objectively reasonable force. The Motion confirms Officer Garcia used minimal force to prevent the aggressive and erratic plaintiff from interfering with the lawful arrest of her boyfriend. In the alternative, the Motion argues Officer Garcia is protected by qualified immunity on the § 1983 excessive force claim.

##### 2. Plaintiff's Opposition

Plaintiff characterizes Officer Garcia's push as a "forceful takedown of [a] non-threatening, non-resisting individual."[23] In applying the *Graham*[24] factors, plaintiff argues the crime was minor, she presented no threat, and she "was not actively resisting or attempting to flee" and "trying to comply with the general directive to leave the venue."[25] Plaintiff claims an issue of fact exists because plaintiff "was not aware that officers were attempting to take her boyfriend into custody" and that whether "she grabbed a sergeant's

---

[22] *Scott*, 550 U.S. at 380.

[23] ECF No. 23 at 11:17-19.

[24] *Graham v. Connor*, 490 U.S. 386 (1989).

[25] ECF No. 23 at 12:3-27.

MAC: 14687-511 (#6054423.2)

arm . . . is a disputed fact that [plaintiff denies] and, even if true, hardly constitutes an immediate threat justifying being slammed to the ground."[26]

With respect to the qualified immunity argument, plaintiff argues it was "the right of a non-threatening, non-resisting individual to be free from being choked and forcefully slammed to the ground without warning and then hit/punched in the stomach" was clearly established. In support, plaintiff's Opposition references *Meredith v. Erath*[27], *Headwaters Forest Defense v. Cnty. of Humboldt*[28], *Smith v. County of Orange*[29].

### 3. **Defendants' Reply.**

#### a. **The force was objectively reasonable.**

The videos show Officer Garcia used brief, open-hand, empty-force shoves to move plaintiff backward after she inserted herself into an ongoing arrest in a narrow hallway, ignored dispersal commands, yelled at officers, and attempted to breach the police line. The severity of plaintiff's own conduct - obstructing officers in a crowded, chaotic setting while they lawfully detained a suspect - justified Officer Garcia's measured response to restore space and safety. The videos do not show gratuitous force, strikes, blows, takedowns, or any "choke." They show exactly what Officer Garcia described: minimal force to keep an interfering, agitated bystander from physically obstructing an arrest.

The "immediate threat" factor also favors reasonableness. Officers faced a dark, congested corridor where concertgoers significantly outnumbered officers. Plaintiff repeatedly approached the police line, gestured, and attempted to push past. In a volatile crowd, a bystander physically encroaching on an active arrest poses safety risks to officers, the arrestee, and the public. Officers are not required to wait until a bystander escalates further before interceding with low-level force to maintain control and safety.

---

[26] *Id.* at 12:19-22.

[27] 342 F.3d 1057 (9th Cir. 2003).

[28] 240 F.3d 1185 (9th Cir. 2000).

[29] 678 F.Supp.3d 1182 (C.D. Cal. 2023)

MAC: 14687-511 (#6054423.2)

Plaintiff emphasizes she was small, unarmed, and "not a serious threat."[30] The videos do not show plaintiff posed a deadly or felony-level threat. They show a real-time obstruction risk, in a dense crowd, that warranted space-creating, open-hand pushes. The level of force matched the governmental interest.

Plaintiff's reliance on cases involving significant force against non-resisting subjects does not change the outcome. For example, *Meredith v. Erath* involved an IRS agent wrenching and twisting a non-resisting accountant's arms behind her back, throwing her to the ground, and digging a knee into her back during a search.[31] *Headwaters* involved officers spraying nonviolent protestors with pepper spray at point-blank range.[32] *Smith v. County of Orange* addressed, on a different record, force used during a nonviolent encounter.[33] Unlike those cases, the videos here show minimal, open-hand pushes in a chaotic, crowded, noncompliant environment to prevent physical interference with a lawful arrest. Those circumstances are materially distinct and favor reasonableness. "Not every push or shove . . . violates the Fourth Amendment."[34]

### b. At a minimum, Officer Garcia is entitled to qualified immunity on the § 1983 excessive force claim.

Under the second prong of the federal qualified immunity analysis, a court evaluates whether the officers' conduct violates clearly established statutory or constitutional rights of which a reasonable officer would have known.[35] "It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established."[36]

---

[30] ECF No. 23 at 6.

[31] *Meredith*, 342 F.3d at 1060-63.

[32] *Headwaters*, 240 F.3d at 1199-1204.

[33] *Smith*, 678 F. Supp. 3d at 1192-1210.

[34] *Graham,* 490 U.S. a 396.

[35] *Rivas-Villegas v. Cortesluna*, 90 U.S. 1, 5 (2022) (citing *White v. Pauly*, 580 U.S. 73, 78-79 (2017)).

[36] *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted).

1   Defendants' Motion argues qualified immunity is appropriate because the Ninth
2   Circuit allows for the force used in this case when an officer is confronted by an aggressive
3   individual attempting to interfere with officers performing their lawful duties in a chaotic
4   group setting where the officers are outnumbered. Defendants' argument rests primarily on
5   the cases of *Jackson v. Bremerton* and *Felarca v. Birgeneau* - two cases involving similar
6   force used against minorly resisting subjects in a group setting.

7   Plaintiff's Opposition does not address either of defendants' cases. According to
8   plaintiff, "the right of a non-threatening, non-resisting individual to be free from being
9   choked and forcefully slammed to the ground without warning and then hit/punched in the
10  stomach" is clearly established. First, contrary to her Opposition arguments, plaintiff
11  previously admitted Officer Garcia never choked her or punched her in the stomach.
12  Because this is an individual claim against Officer Garcia, he can only be responsible for his
13  own actions. Therefore, the only issue is whether it was clearly established pushing an
14  individual who is ignoring commands to "back up" and attempting to interfere with a lawful
15  arrest is unconstitutional. Second, plaintiff omits from her analysis the significant officer
16  and public safety concerns involved in controlling a chaotic group setting.[37] Third,
17  plaintiff's cited cases do not support her claim. Plaintiff cites no Supreme Court or Ninth
18  Circuit decision with materially similar facts holding such minimal force unconstitutional.
19  That ends the inquiry in Officer Garcia's favor.

20  **B.    PLAINTIFF'S *MONELL* CLAIMS FAIL (SECOND CAUSE OF ACTION).**

22  **1.    Defendants' Motion.**

23  Defendants' Motion argues plaintiff's *Monell* claim fails because no constitutional
24  violation occurred, there is no evidence supporting a failure to train claim, and the
25  ratification claim fails because plaintiff offered no evidence a final policy-maker ratified
26  Officer Garcia's force.

---

[37] *See e.g., Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001)*; Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2019)*.*

### 2. Plaintiff's Opposition.

First, plaintiff argues her failure to train claim survives summary judgment because "the very incident at issue provides evidence of failure to train LVMPD officers in de-escalation and crowd control."[38] In support, plaintiff only cites to the conclusory allegations in her own complaint – not any competent evidence regarding LVMPD's training.[39]

Second, plaintiff claims her ratification claim is supported by the fact "Officer Garcia's Use of Force Report was reviewed up his chain of command, with his superiors concluding that his use of force 'was within the guidelines of LVMPD policy.'"[40] The only evidence plaintiff offers supporting her claim is Officer Garcia's Use of Force Report.[41]

### 3. Defendants' Reply.

Plaintiff's *Monell* theory fails for multiple, independent reasons. Municipal liability requires a constitutional violation caused by a policy, longstanding custom, failure to train amounting to deliberate indifference, or ratification by a final policymaker.[42] Plaintiff cannot satisfy any path.

First, no constitutional violation occurred. That alone defeats *Monell* liability.[43] Second, plaintiff identifies no program-wide training deficiency. She points only to the incident at issue and to conclusory allegations.[44] A failure-to-train theory cannot rest on a single officer's conduct in a single incident and requires proof of deliberate indifference in a

---

[38] ECF No. 23 at 19:26-28.

[39] *Id.* at 19:26-20:4.

[40] *Id.* at 19:17-25.

[41] *Id.*

[42] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989).

[43] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1231 (9th Cir. 2013).

[44] ECF No. 23 at 19-20.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-511 (#6054423.2)

training program.[45] Plaintiff conducted no discovery establishing LVMPD's training was inadequate, much less that any deficiency caused a violation here.

Third, the ratification theory fails. Plaintiff asserts supervisors reviewed Officer Garcia's Use of Force Report and concluded the force was "within policy."[46] She never identifies LVMPD's final policymaker for use-of-force decisions, nor does she show any final policymaker made a "deliberate choice" to endorse a subordinate's unconstitutional basis for action.[47] "A mere failure to overrule a subordinate's actions, without more, is insufficient" to impose *Monell* liability.[48] Plaintiff offers no evidence - beyond the report's review - a final policymaker ratified the conduct and its purported reasoning. That is not enough as a matter of law.

Summary judgment should be granted on the *Monell* claim.

### C. PLAINTIFF'S STATE LAW NEGLIGENCE CLAIM FAILS (FIFTH CAUSE OF ACTION).

#### 1. Defendants' Motion.

Defendants' Motion establishes plaintiff's negligence allegation is based primarily on Officer Garcia's intentional acts and an unspecified negligent "tactical response" to the overall situation. The negligence claims based on Officer Garcia's intentional force is non-actionable because an officer cannot negligently use intentional force. With respect to the alleged negligent tactics claim. Nevada's discretionary immunity statute protects Officer Garcia from such a claim unless plaintiff provides evidence of bad faith.

#### 2. Plaintiff's Opposition.

In clarifying her claim, plaintiff argues "Officer Garcia, and other officers were negligent in their 'tactical response' to the situation, including their failure to de-escalate

---

[45] *City of Canton*, 489 U.S. at 388–92; *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85 (9th Cir. 2007).

[46] ECF No. 23 at 19.

[47] *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

[48] *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *see also Gillette v. Delmore*, 979 F.2d 1342, 1348-49 (9th Cir. 1992).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

and their aggressive handling of the crowd, which created the dangerous confrontation in the first place."[49] Plaintiff characterizes defendants' negligence arguments as "overly simplistic" and claims that *Meluzzi v. Larson*[50] establishes "[a] negligence claim can be based on an officer's pre-force tactical decisions"[51] and that LVMPD is not immune from her claims because Officer Garcia acted in bad faith and violated the Constitution.[52]

### 3. Defendants' Reply.

Plaintiff's negligence claim rests on two theories: (1) that Officer Garcia "negligently" used force and (2) that officers' pre-force "tactical response" was negligent.[53] Both fail.

First, Nevada law does not recognize a negligence claim based on an officer's intentional use of force.[54] Courts in this District consistently dismiss negligence theories that recast intentional force as negligent conduct.[55] Plaintiff does not oppose defendants' argument on this point and thereby waives any contrary contention.[56]

Second, discretionary immunity bars the pre-force "tactics" theory absent evidence of bad faith or a constitutional violation.[57] Decisions about crowd dispersal, positioning, and direction of pedestrian flow are classic discretionary judgments. Plaintiff identifies no pre-force conduct undertaken in bad faith and no pre-force constitutional violation. The record

---

[49] ECF No. 23 at 21:11-16.

[50] *Merluzzi v. Larson*, 610 P.3d 739 (Nev. 1980).

[51] ECF No. 23 at 21:7-10.

[52] *Id.* at 21:9-14.

[53] *Id.* 23 at 20–21.

[54] *See* Restatement (Second) of Torts § 282 cmt. d (1965).

[55] *See, e.g., DeCastro v. Las Vegas Metro. Police Dep't*, No. 2:21-cv-00443, 2024 WL 4189939, at *22 (D. Nev. Sept. 12, 2024); *Wells v. City of Las Vegas*, No. 2:22-cv-00558, 2024 WL 2028007, at *16 (D. Nev. May 7, 2024).

[56] See LR 7-2(d).

[57] NRS 41.032; *Falline v. GNLV Corp.*, 823 P.2d 888, 891-92 (Nev. 1991).

MAC: 14687-511 (#6054423.2)

1   shows officers lawfully present, performing crowd control in a chaotic environment, and
2   treating patrons uniformly while intervening only when individuals refused to comply or
3   physically interfered. Without evidence of bad faith or an antecedent constitutional
4   violation, discretionary immunity applies and bars this claim.

Summary judgment is warranted on the negligence claim.

### D.  PLAINTIFF'S IIED CLAIM.

#### 1.  Defendants' Motion.

Defendants' Motion argues plaintiff failed to find any evidence of extreme or outrageous conduct because, at most, plaintiff generated evidence of split-second decision made by Officer Garcia, on the spot, to stop plaintiff from interfering with a lawful arrest. Certainly not an act that exceeds all bounds of decency tolerated in a civil society.

#### 2.  Plaintiff's Opposition.

Plaintiff argues "[a] jury could reasonably find that an armed police officer violently slamming a small, unarmed woman to the ground in a public place, causing her breast to be exposed, is conduct "outside all possible bounds of decency" and "utterly intolerable in a civilized community."[58]

#### 3.  Defendants' Reply.

To establish IIED under Nevada law, plaintiff must prove extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress.[59] The conduct must be "outside all possible bounds of decency" and "utterly intolerable in a civilized community."[60]

No reasonable jury could find extreme and outrageous conduct here. The videos show brief, low-level, open-hand pushes used to maintain space and safety in a chaotic corridor when Plaintiff pressed forward toward an active arrest. Courts routinely hold

---

[58] Pltf's Opp. at 22:18-25.

[59] *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 147 (Nev. 2014).

[60] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). *Scott*, 550 U.S. at 380; *Hughes*, 31 F.4th at 1218-20.

comparable force insufficient to meet the "extreme and outrageous" threshold.[61] Plaintiff emphasizes that her breast became exposed; she has admitted, however, that Officer Garcia never touched her breast and that the exposure occurred accidentally during the second fall.[62] An accidental exposure cannot support an IIED claim, which requires intentional or reckless infliction of distress through extreme and outrageous conduct.

Summary judgment should be granted on the IIED claim.

## IV.   CONCLUSION

Based on the above, summary judgment is appropriate on all claims.

Dated this 14th day of October, 2025.

> MARQUIS AURBACH
>
> By *s/Craig R. Anderson*
> Craig R. Anderson, Esq.
> Nevada Bar No. 6882
> 10001 Park Run Drive
> Las Vegas, Nevada 89145
> Attorneys for Defendants LVMPD and
> Officer Garcia

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (ECF NO. 23)** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 14th day of October, 2025.

☒   I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒   I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: n/a

> *s/Sherri Mong*
> an employee of Marquis Aurbach

---

[61] ECF No. 21 at 25-27.

[62] ECF No. 21 at 9, 26; Pltf's Depo. at 32:8-17; 34:3-17, Ex. A.

MAC: 14687-511 (#6054423.2)