**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ASIA EL-NIMEIRI-WILLIAMS,

Plaintiff

v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,

Defendants

Case No.: 2:24-cv-01906-APG-EJY

**Order (1) Granting in Part Defendants' Motion for Summary Judgment and (2) Directing Williams to Show Cause Why Doe Officer 1 Should Not Be Dismissed**

[ECF No. 21]

Plaintiff Asia El-Nimeiri-Williams sues defendant Las Vegas Metropolitan Police Department (LVMPD) and its employees, police officers George Garcia and Doe Officer 1, related to an incident that took place at the Zouk Night Club inside Resort World Las Vegas in October 2022. Williams alleges that in the early morning hours she was exiting the club with other concert-goers when she was separated from her group. LVMPD officers were directing the crowd to exit the building, and Williams alleges that while doing so, Garcia used excessive force, assaulted her, and battered her by slamming her to the ground and slamming an unknown male patron on top of her. She asserts that as she was leaving the area following her interaction with Garcia, Doe Officer 1 punched her in the stomach. She brings a *Monell*[1] claim against LVMPD, alleging that LVMPD failed to adequately train its officers and that LVMPD ratified the officers' conduct because a final policymaker determined the officers' actions were within policy. She further alleges the defendants were negligent and intentionally inflicted emotional distress.

LVMPD and Garcia move for summary judgment, arguing that all of Williams' claims rely on the assertion that Garcia used excessive force, but the video evidence shows that the

[1] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

force he used was reasonable. The defendants argue that Williams injected herself into the arrest of her boyfriend, so Garcia reasonably pushed her away to prevent her from obstructing the arresting officers and another patron fell on top of her while she was on the ground. Garcia also argues he cannot be liable for the alleged punch to the stomach because Williams admits he did not punch her. Alternatively, Garcia contends that he is entitled to qualified immunity for the federal excessive force claim under 42 U.S.C. § 1983. The defendants argue that Williams' negligence claim fails because it is inconsistent with her allegations of intentional use of force, there is no evidence Garcia was negligent in his tactical decisions, and he is entitled to discretionary immunity under Nevada law. The defendants contend her IIED claim fails because there is no evidence of extreme and outrageous conduct. LVMPD argues that if there is no constitutional violation, then the *Monell* claim necessarily fails. It also argues that she presented no evidence of ratification, and her failure to train claim fails because she conducted no discovery on this claim and did not identify any training inadequacies or similar incidents.

Williams responds that issues surrounding the preparation of Garcia's use of force report undermine his credibility, so his version of the events should not be believed and the video evidence is "ambiguous and open to competing interpretations." ECF No. 23 at 13. She argues that Garcia used unreasonable force by slamming her to the ground when she posed no threat to him or the other officers. As for qualified immunity, she asserts that it is clearly established that officers cannot use that level of force on a non-threatening, non-resisting individual and that fabrications in the use of force report preclude qualified immunity. She contends her negligence claim survives because Garcia and the other officers were negligent in their tactical response to the situation where they did not de-escalate and instead aggressively handled the crowd, which created the confrontation. She asserts Garcia is not entitled to discretionary immunity because

actions that are unconstitutional or done in bad faith are not protected. Williams argues that a reasonable jury could find that Garcia slamming her to the ground without provocation was extreme and outrageous. Finally, Williams contends that her *Monell* claim survives summary judgment based on a ratification theory because supervisors found Garcia's use of force was within LVMPD policy and this incident shows LVMPD failed to train officers in de-escalation and crowd control.

The parties are familiar with the facts, and the incident is captured on numerous videos. I therefore do not set forth the facts except as necessary to resolve the motion. Viewing the video evidence, no genuine dispute remains that Garcia used reasonable force. Additionally, he was not negligent, and his conduct was not extreme and outrageous. As a result, Williams' claims against him fail. Williams has not presented evidence to raise a genuine dispute on *Monell* liability and, because Garcia did not commit a violation, LVMPD is not vicariously liable based on his actions. But genuine disputes remain regarding LVMPD's vicarious liability for Doe Officer 1's alleged assault and battery. Accordingly, LVMPD is entitled to summary judgment on all of Williams' claims except vicarious liability for her assault and battery claims based on Doe Officer 1's conduct. Finally, because Williams has not identified Doe Officer 1, I order her to show cause why her claims against that defendant should not be dismissed.

**I. Garcia is entitled to summary judgment on all claims against him.**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**A. I grant Garcia summary judgment on Williams' § 1983 excessive force, assault, and battery claims because the video evidence shows he used reasonable force.**

Williams' § 1983 Fourth Amendment excessive force claim, as well as her state law assault and battery claims, depend on Garcia using unreasonable force under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) ("The standard for common-law assault and battery by a police officer thus mirrors the federal civil rights law standard: Liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances."). In determining the reasonableness of a non-deadly-force seizure, I balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th

Cir. 2003) (quotations omitted). This entails a three-step analysis. *Id.* First, I assess "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Id.* Second, I assess "the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* Third, I weigh the gravity of the intrusion against the government's interest to determine whether the amount of force was constitutionally reasonable. *Id.*

The reasonableness inquiry looks at all the relevant objective facts and circumstances that confronted the arresting officers in each particular case, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) (quotation omitted); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). Additionally, the reasonableness analysis must consider the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Drummond*, 343 F.3d at 1058 (quotation omitted).

Because the reasonableness balancing test "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," courts should grant summary judgment in excessive force cases "sparingly." *Id.* at 1056. "This is because police misconduct cases almost always turn on a jury's credibility determinations." *Id.* However, I may decide reasonableness as a matter of law if, "in resolving all factual disputes in favor of the plaintiff, the officer's force was objectively reasonable under the circumstances." *Jackson v. City of*

*Bremerton*, 268 F.3d 646, 651 n.1 (9th Cir. 2001) (internal quotation omitted). I am "not required to accept a non-movant's version of events when it is clearly contradicted by a video in the record." *Hernandez v. Town of Gilbert*, 989 F.3d 739, 746 (9th Cir. 2021) (simplified).

Viewing the facts in the light most favorable to Williams, no reasonable jury could find that Garcia used objectively unreasonable force. Garcia inflicted force on Williams in the form of pushes to control the area and prevent her from interfering with other officers who were arresting her boyfriend. Williams does not dispute that the videos accurately depict the incident. The videos show a somewhat chaotic scene as concert-goers tried to exit the venue through a back entrance. *See, e.g.*, Atkinson BWC at 0:00:34-46[2]; *see also* ECF No. 21-2 at 25 (Williams testifying it was "a lot of chaos"). Police officers responded to the scene because they received reports of a fight and that concert attendees were able to access the "back-of-house area" where the performer was located. ECF No. 21-3 at 25; Atkinson BWC at 0:13:05; Christian BWC at 0:11:00-11:21; McCartin 0444 BWC at 0:03:55-4:10. The officers arrived at a T-junction in a hallway that was dark and loud, and the officers were outnumbered by patrons who were trying to cross the police line the officers were setting up to prevent patrons from entering the back area. *Id.* at 27; Atkinson BWC at 0:00:46. Patrons were told to back up, and one of the officers shouted that anyone who did not comply would go to jail. Atkinson BWC at 0:00:56; Garcia 0358 BWC at 0:00:47-:57; Kyger BWC at 0:00:40. Nevertheless, several patrons tried to move past the police line the officers were setting up or otherwise did not follow commands to leave and to back up. Atkinson BWC at 0:01:05-1:34; Kyger at 0:01:00.

[2] There are several videos from the officers' body worn cameras (BWC). I cite to the videos by reference to the last name of the officer and the approximate run time on the video (not the time depicted within the video).

The officers then decided to arrest Williams' boyfriend, Kay Houston. Atkinson BWC 0:01:34; ECF No. 21-2 at 17. As the officers did so, Williams grabbed onto the arm of one of the officers attempting to place Houston into custody and screamed for them to stop.[3] Christian BWC at 0:01:28; Video C at 0:00:02.[4] Garcia pushed her away, Williams fell hard to the ground, another patron fell on top of her, her top was dislodged, and her breasts were briefly exposed.[5] Garcia 0358 BWC at 0:01:33; McCartin BWC at 0:01:15-2:34; Video C at 0:00:03-05; ECF No. 21-2 at 37. The patron who fell on Williams assisted her to her feet. Video C at 0:00:10.

Williams again approached Garcia and tried to move past him, but Garcia pushed her back, although she did not fall to the ground again. Garcia BWC 0:02:40; Video C at 0:00:21. She identified Houston as her husband and Garcia responded that he was being arrested. Garcia BWC at 0:02:44. Garcia lightly pushed Williams several more times because she continued to approach, tried to get past him, and did not comply with his commands to back up, but she did not fall down. *Id.* at 0:02:44-3:06. He also warned her that he would arrest her. *Id.* at 0:03:06. One of the other patrons intervened to pull her back and her interaction with Garcia ended when Houston was led past her and she followed. *Id.* at 0:03:17-04:30.

---

[3] At her deposition, Williams denied that she grabbed an officer before she was pushed, but the videos show otherwise. *See* ECF No. 21-2 at 32-33. She also testified she fell twice, although her testimony was a bit unclear about which time she believed her breasts became exposed. ECF No. 21-2 at 34-37. Garcia's bodycam footage shows that the first time he pushed her was when she physically inserted herself into the arrest, and that is when she fell and another patron fell on her. Garcia 0358 BWC at 0:01:13-1:33. Although the video footage shows Garcia pushing Williams several times after that, she does not go to the ground a second time.

[4] Video C is cellphone video footage from another patron. ECF Nos. 21-1 at 1; 21-2 at 14.

[5] Williams concedes the exposure was accidental. ECF No. 21-2 at 37.

In sum, Garcia pushed Williams as she grabbed onto one of the officers and physically inserted herself into the arrest. He used minimal force that served the important government interest of preventing her from obstructing the officers making the arrest. The subsequent pushes were even less forceful and occurred when Williams repeatedly approached the police line and did not comply with commands to back up. On balance, Garcia's force was objectively reasonable, and no reasonable jury could find otherwise. I therefore grant summary judgment in Garcia's favor on counts one, three, and four of the amended complaint.

Williams' arguments about Garcia's alleged fabrications or discrepancies related to his use of force report do not change this result. Regardless of what is in Garcia's report, Williams does not dispute that the videos are authentic, and those show the force used was reasonable as a matter of law. Williams has not asserted any claim related to the use of force report.

**B. Garcia is entitled to summary judgment on Williams' negligence claim.**

Under Nevada law, a negligence claim has four elements: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Ent., LLC*, 180 P.3d 1172, 1175 (Nev. 2008) (en banc). To the extent Williams' negligence claim is based on excessive force, it fails because Garcia's use of force was reasonable, so he did not breach a duty of care. *See* ECF No. 10 at 17 (alleging that Garcia breached a duty of care by slamming her on the ground).

Williams also alleges in her negligence claim that Garcia was negligent in his tactical response to the situation. *Id.* at 17-18. Garcia argues this claim fails because there is no evidence he was negligent in his tactical decisions, and, in any event, he would be entitled to discretionary immunity under Nevada law. Williams responds that Garcia and the other officers were negligent in their tactical response to the situation because they did not de-escalate and instead

aggressively handled the crowd, which created the confrontation. She asserts Garcia is not entitled to discretionary immunity because actions that are unconstitutional or done in bad faith are not protected.

Even viewing the facts in the light most favorable to Williams, no reasonable jury could find Garcia was negligent. Garcia's decision, along with other officers, to form a police line to prevent concert-goers from accessing a back-of-house area and directing them to disperse through other exits did not breach a duty to Williams. The area was dark and loud, so the officers' shouts were necessary to be heard, and patrons were not dispersing and some were trying to get past the police line. Thus, some physical force was reasonably justified. And Garcia's use of force on Williams was reasonable, as discussed above. I therefore grant summary judgment in Garcia's favor on the negligence claim in count five.

**C. Garcia is entitled to summary judgment on Williams' IIED claim.**

Under Nevada law, an intentional infliction of emotional distress (IIED) claim requires three elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted). However, "persons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind." *Id.* (omission and quotation omitted); *see also* Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

The Supreme Court of Nevada has referred to the Restatement (Second) of Torts § 46 as relevant authority for IIED claims under Nevada law. *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023, 1027 (Nev. 2000); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980). A police officer's conduct may rise to the level of extreme and outrageous when he engages in an "extreme abuse" of his position. Restatement (Second) of Torts § 46, cmt. e. The comments to the Restatement offer examples of when a police officer's conduct may be so outrageous as to support an IIED claim, such as where the officer attempts to extort money by a threat of arrest or attempts to extort a confession by falsely telling the accused her child has been injured in an accident and she cannot go to the hospital until she confesses. "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

Here, no reasonable jury could find Garcia's conduct was extreme and outrageous because he used reasonable force. Even if he did not, the pushes and crowd control tactics he used do not rise to the level of an extreme abuse of police power sufficient to support an IIED claim. I therefore grant summary judgment in Garcia's favor on the sixth claim for IIED.

**II. LVMPD is entitled to summary judgment on all claims excep5 Williams' assault and battery claims based on Doe Officer 1's conduct.**

Williams' claims against LVMPD fall into three categories: (1) *Monell* claims under § 1983 for Garcia and Doe Officer 1's conduct, (2) vicarious liability for Garcia's conduct, and (3) vicarious liability for Doe Officer 1's conduct.

/ / / /

**A. LVMPD is entitled to summary judgment on the *Monell* claims.**

Because Garcia did not violate Williams' constitutional rights, LVMPD cannot be liable under *Monell* for his acts. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (stating that *Monell* claims "require a plaintiff to show an underlying constitutional violation"). Even if Garcia had committed a violation, Williams has not raised an issue of fact on ratification because she has not presented evidence that a final policymaker endorsed Garcia's conduct as within LVMPD policy. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). And she has not identified a failure in LVMPD's training that led to the incident, nor has she presented evidence of a training gap that amounts to deliberate indifference to constitutional rights. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021). Likewise, Williams has presented no evidence to support a *Monell* claim based on Doe Officer 1's alleged punch because there is no evidence that a final policymaker ratified his conduct; that an LVMPD policy, custom, or practice caused an isolated punch; or that a failure to train led to the punch. *See Gordon*, 6 F.4th at 974; *Benavidez*, 993 F.3d at 1153-54. I therefore grant LVMPD summary judgment on the *Monell* claim in count two of the amended complaint.

**B. LVMPD is entitled to summary judgment on the state law claims based on Garcia's conduct.**

Counts three, four, five, and six of the amended complaint allege state law claims against LVMPD based on vicarious liability for Garcia's acts. ECF No. 10 at 14-19. "Vicarious liability is liability that a supervisory party bears for the actionable conduct of a subordinate based on the relationship between the two parties." *McCrosky v. Carson Tahoe Reg'l Med. Ctr.*, 408 P.3d 149, 152 (Nev. 2017) (simplified). Because I grant summary judgment in Garcia's favor on these

claims, his conduct is not actionable, so I also grant summary judgment in LVMPD's favor to the extent these claims are based on Garcia's conduct.

**C. LVMPD has not established that it is entitled to judgment as a matter of law on the state law assault and battery claims based on Doe Officer 1's conduct.**

Williams testified that as she was leaving the club following her encounter with Garcia another officer punched or jabbed her in the stomach. ECF No. 21-2 at 40-41. At her deposition, Williams stated she had not seen that captured on any video, but she described the officer as white with brown hair, taller than her, and with a "distinct mustache."[6] *Id.* at 41-42. According to Williams, the officer had no reason to punch her, she was "not aggressive with him at all," and she did not say "anything to instigate him." *Id.* at 43; *see also id.* at 55 (stating she was "punched for no reason").

Viewing the facts in the light most favorable to Williams, LVMPD has not met its initial burden to show it is entitled to summary judgment on its vicarious liability for the assault and battery claims based on Doe Officer 1's punch. According to Williams, the officer had no reason to punch or jab her in the stomach. LVMPD does not point to any refuting video. I therefore deny LVMPD summary judgment on these claims.

**D. LVMPD is entitled to summary judgment on the negligence claim based on Doe Officer 1's conduct.**

It is not clear whether Williams is pursuing a negligence claim against Doe Officer 1 and vicariously against LVMPD for his conduct, but regardless, Williams cannot base her negligence

---

[6] Garcia's body worn camera video may have captured the moment of the alleged punch/jab. *See* Garcia 0358 at 0:04:20. But it is unclear whether this is the incident Williams described, as no party cites to this video clip as the specific conduct she bases her claim on, and she testified she had not seen the punch or jab to her stomach on video.

claim on Doe Officer 1's intentional punch or jab to her stomach. *DeCastro v. Las Vegas Metro. Police Dep't*, No. 2:23-cv-00580-APG-EJY, 2024 WL 4189939, at *22 (D. Nev. Sept. 12, 2024) (predicting "that the Supreme Court of Nevada would agree with the Supreme Court of Arizona that negligence and intent are mutually exclusive grounds for liability, and there is no cognizable claim for the negligent use of intentionally inflicted force" (quotations omitted)). I acknowledge this issue is presently pending before the Supreme Court of Nevada on a certified question from the Ninth Circuit. *See K.C. by & through Navarro v. Las Vegas Metro. Police Dep't*, 163 F.4th 701, 703 (9th Cir. 2026); *Las Vegas Metro. Police Dep't, et al. v. K.C., et al.*, Nev. Sup. Ct. Case No. 91870. But until the Supreme Court of Nevada rules otherwise, I reaffirm my prior conclusion that negligence and a police officer's intentional use of force are mutually exclusive. *DeCastro*, 2024 WL 4189939, at *22. Williams has not argued or presented evidence that Doe Officer 1 was among the officers who allegedly made negligent tactical decisions about how to deal with the crowd, as she states only that she encountered him as she exited, he told her to get out, and he jabbed or punched her in the stomach. See ECF No. 23 at 2-3, 21 (arguing that Garcia and other unidentified officers were negligent in their tactical decisions but not arguing that Doe Officer 1 was). I therefore grant LVMPD summary judgment on the negligence claim based on Doe Officer 1's conduct.

**E. LVMPD is entitled to summary judgment on the IIED claim based on Doe Officer 1's conduct.**

A single punch or jab to the stomach is not an extreme abuse of a police officer's position sufficient to support an IIED claim. I therefore grant LVMPD summary judgment on the IIED claim based on Doe Officer 1's conduct.

**III. Williams has never identified Doe Officer 1, so I order her to show cause why all claims against that person should not be dismissed.**

Williams has never identified Doe Officer 1, the discovery period is closed, and she has not moved to amend to add that officer as a defendant. ECF No. 19. I therefore order her to show cause why I should not dismiss all claims against Doe Officer 1.

**IV. Conclusion**

I THEREFORE ORDER that defendants Las Vegas Metropolitan Police Department and Officer George Garcia's motion for summary judgment **(ECF No. 21) is GRANTED in part**. The motion is granted as to all claims against defendant George Garcia. The motion is granted as to all claims against defendant Las Vegas Metropolitan Police Department except for the assault and battery claims based on the conduct of Doe Officer 1.

I FURTHER ORDER plaintiff Asia El-Nimeiri-Williams to show cause why her claims against Doe Officer 1 should not be dismissed. Failure to respond to this order by August 12, 2026 will result in those claims being dismissed.

DATED this 25th day of July, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE